**28 P.(2d) 502**

**THARP v. MASSENGILL.**

No. 3913.

Supreme Court of New Mexico.

Dec. 19, 1933.

ZINN, Justice.

This is a civil action brought by W. C. Tharp, appellee, plaintiff below, against C. A. Massengill, the appellant, defendant below. The parties will be referred to herein as they were in the lower court, that is plaintiff and defendant.

The plaintiff alleged in his complaint that on or about the 1st day of January, 1929, he entered into a joint adventure by verbal agreement with defendant to handle personal property and real estate for profit. That the terms and conditions of such adventure were substantially to the effect that plaintiff would find properties for sale, and the defendant would finance them, and that they would share the profits and losses equally.

As to the particular agreement upon which this action is brought, the plaintiff, about February 1, 1930, found that the farm and chattels belonging to one Jess Comer were for sale at a certain price, which information he communicated to the defendant. The Comer property consisted of a 320-acre farm and certain live stock, tools, and equipment which could be purchased for the sum of $5,-000 subject to a federal farm loan. It was agreed between plaintiff and defendant that they would buy said property and that the defendant would pay for said property, and plaintiff and defendant would share in the profits of said transaction equally as theretofore agreed upon.

The plaintiff alleged that subsequent to his ascertaining from Comer, Comer's desire to sell, and imparting such information to the defendant, that the defendant secretly

James A. Hall, of Clovis, for appellant.

A. W. Hockenhull, Carl A. Hatch, and Perkins L. Patton, all of Clovis, for appellee.

entered into further negotiations with Comer and purchased said property in defendant's own name for $5,000, and refused to carry out the agreement of joint adventure, and refused to permit the plaintiff to have his share in said property, which breach of contract by the defendant damaged the plaintiff in a sum equal to one-half of the reasonable value of said premises and property after deducting the purchase price, which total profit on said deal is at least in the sum of $10,000.

Defendant filed his answer, in which he generally denied each allegation of plaintiff's complaint, but did admit that he purchased from Comer an undivided one-half interest in the estate, some live stock, farm equipment, and feed from the said Comer, all at an agreed price of $5,000, and that, in addition to said purchase price, the defendant was further out the sum of $72 in adjusting insurance and $25 attorneys' fee in closing the transaction, making a grand total purchase price of $5,197, and that said property was purchased subject to a mortgage held by the Federal Land Bank.

The case was tried before a jury resulting in a verdict in favor of plaintiff in the sum of $4,000, followed by judgment of the district court.

The defendant plants his appeal on six alleged errors of the trial court, and prays for a reversal.

Four of said assigned errors are based on admission or rejection of testimony, one based upon a general assignment that there was no substantial evidence to sustain the verdict of the jury, and that the amount of damages found due from defendant is excessive and beyond that which can be sustained by the evidence, and one alleged error is based on the ruling of the court in finding that Perkins L. Patton, one of the attorneys for the plaintiff and the son of the trial judge, did not have a contingent fee contract whereby his compensation as an attorney for the plaintiff depended upon recovery and collection of the judgment against the defendant, and in the conclusion following to the effect that the trial judge was not thereby disqualified.

As to the alleged error that there was no substantial evidence to support the verdict and judgment for damages, we find from the record that there was substantial evidence offered and received to support the verdict of the jury and the judgment of the court, and such verdict and judgment cannot now be disturbed.

Coming to the four errors charged to the trial court because of the admission or rejection of testimony, we find that the defendant objected to permitting witness Comer to testify concerning the amount he was sued for by the defendant as the damages for breach of contract. To understand this objection more clearly, we must narrate at length. It appears that Comer, after agreeing to sell the land and chattels to the defendant, refused to convey and transfer to the defendant as per agreement, and that the defendant brought an action for damages against Comer, wherein he alleged that the property in question was reasonably worth the sum of $18,500, and because of Comer's failure to carry out the terms of his agree-

ment, Massengill had been damaged to the extent of the difference between the agreed purchase price and its value as alleged by Massengill, said damages amounting to $10,000. In this suit between Tharp and Massengill, Tharp placed Comer on the stand, and was asked by counsel for Tharp, what was the amount he had been sued for by Massengill. The objection was made that the evidence was immaterial in that the amount sued for is not proof in the instant case, and does not prove the value of the land. The objection was overruled, and Comer was permitted to testify. Later, the complaint of Massengill against Comer was admitted in evidence without objection.

The property involved in the suit of Massengill against Comer is the same property which is the subject of the transaction causing the immediate suit between plaintiff and defendant herein.

The testimony was competent to show what the defendant thought was the value of the property and how much profit there was in the deal at the time defendant breached the alleged contract with the plaintiff, though its probative force was slight, if any, being merely the declaration of the defendant's own appraisal as shown by his sworn complaint, which was admitted without objection.

■ As to point two, wherein the court struck the answer of defendant which was unresponsive to a question eliciting affirmative knowledge when the responsive answer was defendant's belief rather than his knowledge as the question called for, we can see no error therein.

■ Points three and four relate to rebuttal testimony of the plaintiff through witnesses Comer and Owen, offered and admitted, which testimony was to the effect that just previous to the time negotiations between Massengill and Comer were pending, Comer had been offered $40 per acre for the land; it appears that the defendant introduced testimony showing the value of the land to be much less than the amount claimed by the plaintiff, and plaintiff then offered the testimony of witnesses Comer and Owen in rebuttal to show that Comer had been offered $40 per acre for the land by one Cleve Woods, which offer was made at about the time of the transactions between Massengill and Comer, over which this suit arose. The objection was made by the defendant that this testimony was inadmissible because an offer to buy is not a true test of the value of land, nor is such offer evidence of the fair market value of the land. The testimony of experts' as to the fair market value of the land was already in the record, and this offer was merely cumulative and corroborative of the testimony introduced by the experts as to the fair market value of the land, and was competent to show that a bona fide offer was made for the land equal to at least as much as the experts testified the value of the same to be. Whether or not testimony which is introduced to prove that certain offers to buy property at certain times is or is not admissible, depends largely upon and under what circumstances such offers are made, and by whom such offer was made, and when and for what purpose it is offered in evidence. It is largely a question to

be determined from the issue to be proved or disproved. An offer to pay a certain amount for property does not necessarily involve an estimate that such offer is the full value of the land, while on the other hand, such an offer does, except under ordinary circumstances, involve an estimate that the land is worth at least as much as the amount offered, and is therefore relevant to show that the land is worth not less than such amount. 22 C. J. 179. The offer in this instance was made to the former owner, at and about the time the defendant purchased the same from Comer and it corroborates the testimony of experts as to the fair market value and rebuts the depreciated value sought to be established by the defendant. In a determination of value of property strict rules of evidence cannot be adhered to because value is largely a matter of individual estimate or opinion. Sometimes slight circumstances, which ordinarily would not be admissible in evidence for other purposes may be admitted for the purpose of proving value if such evidence has any probative force. What the market value of a piece of property might be is largely controlled by consideration of what would be a fair price if a market could be found. To determine what a fair price would be if a market could be found, evidence of bona fide offers is admissible to show the basis of market value. Furthermore, in the instant case, it was admissible to rebut the testimony of the defendant as to his opinion of value and in support of the expert testimony as to the fair market value of the land.

In considering the assignment of error which the defendant charges was prejudicial to him because the trial judge found that Perkins L. Patton, one of the attorneys for the plaintiff and son of the trial judge, did not have a contingent fee contract whereby his compensation as an attorney for the plaintiff depended upon the recovery and collection of the judgment against the defendant, and in the conclusion following to the effect that the Honorable Harry L. Patton was not disqualified as trial judge, it becomes necessary to relate the facts.

The record shows that after the jury brought in a verdict in favor of plaintiff and against defendant in the sum of $4,000, and after the Honorable Harry L. Patton, the presiding judge of the district before whom this cause was tried, entered a judgment in accordance with the verdict, and on the 3d day of October, 1932, the defendant filed a motion for new trial.

The allegations of said motion material to an understanding of the assignment of error are that Perkins L. Patton was an attorney for the plaintiff in the trial of said cause, and made the closing argument to the jury, and had theretofore participated in the trial of said action as one of the attorneys for the plaintiff. That the said Perkins L. Patton is the son of the Honorable Harry L. Patton, the presiding judge in the trial of the cause, and the fee and compensation of the said Perkins L. Patton was upon a contingent percentage basis because his compensation for services rendered the plaintiff depended entirely upon the result of said litigation, pursuant to a

contract with the plaintiff for a percentage of the judgment recovered, such compensation being graduated and controlled by the amount of recovery. The defendant alleged in said motion for new trial that knowledge of such contingent fee did not come to him or to his counsel until after the trial of the cause, and that defendant and his counsel did not know until after the trial of this cause and until after the rendition of the verdict of the jury that the said Perkins L. Patton's compensation depended upon the contingency of recovery and that by reason of the foregoing, the Honorable Harry L. Patton, father of said Perkins L. Patton, who presided as the trial judge in this cause, was under the Constitution of the state of New Mexico, to wit, section 18 of article 6, disqualified to sit and preside because of his relationship to the said Perkins L. Patton, who was in reality one of the parties plaintiff in said cause.

Upon the filing of such motion for new trial, the Honorable Harry L. Patton recused himself, and the Honorable Milton J. Helmick, presiding judge of the Second judicial district of the state of New Mexico, was designated by the Chief Justice of the Supreme Court to hear and decide said motion.

The facts relating the nature of the employment of the firm of Hatch & Patton disclose briefly the following: That Governor Hockenhull was originally employed to represent plaintiff, and would receive for his services 50 per cent. of any sum recovered. Hockenhull associated the firm of Hatch & Patton with him in the case. There was no agreement between Hatch & Patton and Hockenhull concerning a division of fees. The matter was not discussed between Hockenhull and Hatch & Patton. It was not until after the verdict had been rendered and the judgment was entered that any promise was made to either Judge Hatch or Mr. Patton concerning division of a fee. After judgment had been entered, plaintiff wrote a letter addressed to Hatch in which he stated he would pay Hockenhull and Hatch & Patton 50 per cent. of the sum recovered. Somewhere in the course of time and before the trial, Hatch & Patton received the impression that there was an understanding that there was a contingent fee arrangement with Hockenhull. Neither Hatch nor Patton dealt with Tharp and had no fee arrangement with him. The evidence was conflicting. Tharp testified that he engaged the firm of Hatch & Patton without any agreement as to compensation. On the other hand, Hatch testified positively that he did not deal with Tharp, but became associated with Governor Hockenhull under circumstances which, in our judgment, put his compensation on a contingent basis.

Judge Helmick made certain findings of fact and conclusions of law relative to the charges aforesaid, which findings and conclusions material hereto are as follows:

"Apparently, as I get it, the firm of Hatch & Patton took the case sights unseen. At the time of acceptance of employment there was no understanding about compensation. It is clear, at that time, to me, that Mr. Tharp, when he employed them, did have in his own mind contingent compensation. He assumed that the additional counsel, that is, the firm of Hatch & Patton, would be compensated

out of the fund which he had agreed to pay Governor Hockenhull in the event of recovery. But at the time he consulted them and employed·them and they accepted the employment, there was no arrangement of any sort, and at that time, at least, if the thing had terminated shortly thereafter, the firm of Hatch & Patton could have collected only the reasonable value of their services. * * * After the verdict was in, the plaintiff volunteered the information to Hatch & Patton that they would be paid out of the fifty per cent. fund when the judgment was collected. * * * It is a border line case and I am pretty much embarrassed in passing on it, I cannot help but feel this way about it. I assume it was a fair trial, and we know, of course, Judge Patton knew nothing about the contingent feature of it. * * * I don't know whether you could disqualify a judge who had his son as one of the parties when he didn't know it. It would be far fetched to disqualify a judge on that account. Nevertheless it gives me comfort to make a finding that Judge Patton knew nothing of the contingent feature. * * * I find that a contingent fee has been offered by Mr. Tharp, and as I have already stated, from the very beginning Mr. Tharp was under the impression that a contingent fee agreement was in existence. I will find that, but this letter came from Mr. Tharp afterwards, after the trial, and there is no convincing evidence that there was any acceptance of it by counsel here, on which, for instance they could base a claim for recovery. * * * Looking at it in a strictly legalistic way, we can say there was no meeting of the minds, and Hatch and Patton could only recover compensation, on quantum meruit."

Judge Helmick apparently failed to sense the conflict between Tharp's testimony and that of Tharp's counsel as to the fee arrangement and basis of employment. We cannot accept his conclusion. We are forced to draw our own conclusion, that from the evidence submitted the compensation of the firm of Hatch & Patton was on a contingent basis. We cannot sustain the trial court's contrary conclusion.

We are then called upon to determine whether the judgment should be sustained even though the ruling of Judge Helmick be placed on a wrong ground, or else reverse the judgment because of error or irregularity.

We have held that the judicial act of a judge disqualified by relationship is an error or irregularity in the proceeding. Kavanaugh v. Delgado, 35 N. M. 141, 290 P. 798.

This ruling alone is insufficient to determine the question before us. We must also determine whether the fact that the compensation for the services of Hatch & Patton in behalf of the plaintiff was contingent, disqualifies the trial judge because one member of the firm is the son of the trial judge.

Article 6, § 18, of our Constitution reads as follows: "No judge of any court nor justice of the peace shall, except by consent of all parties, sit in the trial of any cause in which either of the parties shall be related to him by affinity or consanguinity within the degree of first cousin, or in which he was counsel, or in the trial of which he presided in any inferior court, or in which he has an interest."

We are presented with a question of paramount importance to the bar and bench of the state, as well as to the litigants and the general public. To answer this question, we are called upon to construe the constitutional limitation upon the power of judges to preside in the trial of causes. The difficulty lies in the interpretation and definition of the word "parties." The courts of other states have been called upon to define this word appearing in statutes designed to cover the same purpose as our Constitution. This question is not one of first impression in other jurisdictions. In fact the cases covering this subject are voluminous and the notes and digests on this subject are sufficient sign posts which show the way to the inquisitive and industrious student of this subject.

Starting with the cases cited in 11 A. L. R. 1325, on through the cases cited in the Blue Book of Supplemental Decisions, down to the case of Stearns v. Stearns et al., decided by the Supreme Court of Florida, Special Division B, on the 9th day of August, 1932, reported in 143 So. 642, the cases cited in 42 L. R. A. (N. S.) 1172, and in L. R. A. 1918F, 1036, and in 15 Ann. Cas. 533, and in 90 Am. St. Rep. 115, and in 82 Am. St. Rep. 195, or the cases reported in the digests, Cent. Dig. Judges § 212 and the Decennials under Judges ☞46, will disclose such a maze of divergent views, that we become lost in a labyrinth of authorities and sink in a quandary of doubt as to the correct rule to be laid down.

Though some of the courts have adopted the technical signification of the word "parties" and confined its application to parties so designated in the record, others have given a broader meaning to the statute by holding that by "parties" was meant every person who had a pecuniary interest in the lawsuit, whether his name was mentioned in the pleadings or not. Without attempting to distinguish, criticise, or to debate with the proponents of contrary views, we hold with the latter view.

In a very early Texas case, the court held that a surety upon a claimant's bond is in legal contemplation such a "party" to the cause, so that his relationship within the prohibited degrees to the magistrate before whom the cause is pending will disqualify the magistrate from trying the cause. Chief Justice Willie, speaking for the court, said: "A narrow or contracted construction of the term 'party,' which confines it to the very persons named on the docket as such, * * * would often defeat the end had in view, of having justice impartially administered free from the bias and influence produced by the interest held in the cause by the judge or his relations." Hodde v. Susan, 58 Tex. 389, at page 394.

Though a very recent Texas case, citing other decisions from the same jurisdiction, applies an apparently different rule. Missouri State Life Ins. Co. v. Rhyne (Tex. Civ. App.) 276 S. W. 757.

In the case of Roberts v. Roberts, 115 Ga. 259, 41 S. E. 616, 617, 90 Am. St. Rep. 108, the Supreme Court of Georgia, construing the word "party" in a statute referring to the same subject-matter that is referred to in article 6, § 18, of our Constitution, where, on an

application for alimony, counsel for respondent insisted that the judge was disqualified from presiding, for the reason that his brother was leading counsel for the applicant and his fee in the case was contingent upon recovery, said:

"Should the word 'party,' in the section of the Code just referred to, be given the technical and narrow meaning of one who is a party to the record, and absolutely bound by the judgment in the case? Or should that word be construed more liberally, and include any one who is pecuniarily interested in the result of the suit, although not a party to the record, and not necessarily bound by the judgment therein, notwithstanding he would be benefited by the judgment if rendered in a particular way? * * * In the light of the rule which has been followed in this state with reference to a juror who is related to a person interested in the result of the suit, although not a party to the record, we think the proper construction to be placed upon the word 'party' in the section of the Code which declares when a judge shall be disqualified is the broad meaning which would include any one pecuniarily interested in the result of the case, and not the narrow and technical meaning which would limit the rule to a person who was a party to the record.

"The reasons at the foundation of the rule which forbid a juror from sitting in a case where he is related to some one pecuniarily interested in the result of the suit would also apply in the case of a judge who was in a similar situation. If one not a party to the record, but directly and pecuniarily interested in the result of the cause, would be such a party thereto as to disqualify one of his kinsmen from being a juror, he would also be such a party as to disqualify his kinsmen from presiding as judge."

However, in a very recent case, decided March 5, 1932, the Georgia Supreme Court held that a trial judge was not disqualified by reason of relationship within the prohibited degree to an attorney representing interveners on contingent fee. Parker v. Pender et al., 174 Ga. 579, 163 S. E. 506.

This is contrary to the views of the same court in the case of Western & A. R. R. v. Michael, 172 Ga. 561, 158 S. E. 426, followed by the Court of Appeals of Georgia, Division No. 2, on August 28, 1931, in the case of Western & Atlantic R. R. v. Michael, 43 Ga. App. 703, 160 S. E. 93. In these two cases the question submitted was, in prosecuting a civil suit to recover damages for a homicide, two attorneys had been employed under a contract with the plaintiff whereby the attorneys' fees for services in connection with the case are contingent solely upon a recovery for the plaintiff, and to receive a certain percentage of the amount recovered in the suit, to be equally divided between the two attorneys. The suit having been filed by both attorneys as attorneys of record for the plaintiff, the attorney related to the judge withdrew from the case with the consent of the plaintiff, but still expected to participate in the fee in the same amount and on the same contingency as provided for in the former contract. The court held that from the facts shown, the judge was disqualified.

In Arkansas a lawyer engaged in the trial of a cause suggested to the court that Bullock.

one of the attorneys in the case, was interested in the trial of said cause, and his fee depended upon the rendition of a judgment in favor of his client. Bullock was related to the judge presiding at the trial, and for this reason the judge was asked to decline to preside at the trial. The judge seemed to be very sensitive where he considered his judicial dignity was involved, and fined the lawyer for contempt. The lawyer appealed to the Supreme Court of the state. The Supreme Court of Arkansas said: "While the Constitution speaks of a 'party' to the cause, we are of the opinion that, both upon sound reason and according to the weight of authority, the word should not be construed, in a technical and restricted sense, to mean a party to the record, but it should be held to mean any one who is pecuniarily interested directly in the result of the suit, although not a party to the record, and not necessarily bound by the judgment. Any other construction totally disregards the spirit, and defeats the purpose of the constitutional prohibition; for if a judge may be influenced at all in his judgment by the fact that a person, who is directly interested in the result of the suit, is related to him, the potency of the influence is not lessened by the absence of the related party from the record." Johnson v. State, 87 Ark. 45, 112 S. W. 143, 145, 18 L. R. A. (N. S.) 619, 15 Ann. Cas. 531.

The Supreme Court of Kansas in the leading case of Brown v. Brown, 103 Kan. 53, 172 P. 1005, 1006, L. R. A. 1918F, 1033, on a question similar to the one here under consideration, said: "It is defendant's contention that the son of the district judge is a 'party,' within the meaning of the statute. There are two lines of authorities respecting the construction which should be given to the term 'parties' as used in constitutional or statutory provisions intended to disqualify a judge from sitting in a cause in which he is related to one of the litigants. In some jurisdictions the word is given a narrow and technical meaning, and the judge will not be held disqualified unless the person to whom he is related is in strictness one of the parties to the cause. In other jurisdictions the rule adopted is that if the judge is related to an attorney in the cause whose fee is contingent upon success, or the amount of the fee is to be fixed and determined by the court, he is a party within the meaning of the provision requiring a change of venue where the judge is related to one of the parties. In our opinion the spirit and purpose of the statutory provision is best subserved by the latter construction."

In 15 R. C. L. 534, it is said: "The great weight of authority is that a judge whose relation, within the specified degree, is attorney in an action, with fees contingent on recovery, is disqualified to sit therein, under a constitutional provision that no judge shall preside in the trial of a case where either of the parties shall be connected with him by consanguinity within a certain degree, although the authorities are not all agreed on this point."

In Moses v. Julian, 45 N. H. 52, 84 Am. Dec. 114, will be found an exhaustive dissertation in which a great many decisions are cited upon the subject of the disqualification of judg-

es by reason of interest, relationship, or affinity, and bias or prejudice.

Construing section 170 of the California Code of Civil Procedure, which prohibits a judge from sitting or acting as such in any proceeding "when he is related to either party * * * by consanguinity or affinity within the third degree computed according to * * * law," the Supreme Court of California (in the case of Howell v. Budd, 91 Cal. 342, 27 P. 747, 749) has said: "To hold that the word 'party,' as used in section 170 of the Code of Civil Procedure, is confined to parties of record by name, would be a construction so narrow as to find support neither in principle nor authority. * * * We conclude, therefore, that the word 'party,' as used in section 170, is not confined to the parties to the record by name, but includes all persons represented by parties to the record."

The Alabama law (construed in Crook v. Newborg, 124 Ala. 479, 27 So. 432, 82 Am. St. Rep. 190) reads: "No judge of any court, chancellor, county commissioner, or justice [of the peace] must sit in any cause * * * in which he is interested, or related to either party within the fourth degree of consanguinity or affinity." Code 1896, § 2637.

And it was held that: "The purpose of the statute is to secure to litigants a fair and impartial trial by an impartial and unbiased tribunal. Next in importance to the duty of rendering a righteous judgment is that of doing it in such manner as will beget no suspicion of the fairness or integrity of the judge. The principle of disqualifica-

tion is to have no technical or strict construction, but is to be broadly applied to all classes of cases where one is appointed to decide the rights of his fellow citizens. * * * Disqualifying statutes are not to be construed in a strict, technical sense, but broadly, with liberality. The term "party," used to indicate persons to whom the judge is related, and who are connected with the litigation, is not confined to parties of record.' 12 Am. & Eng. Enc. Law, p. 41, and notes 3 and 4, p. 42. * * * These authorities are conclusive that the disqualification extends not only to the party to the records, but that the judge is incompetent when related within the fourth degree to any person interested in the judgment or decree." See, also, Gill v. State, 61 Ala. 171.

In the case of First National Bank v. McGuire, 12 S. D. 226, 80 N. W. 1074, 1076, 47 L. R. A. 413, 76 Am. St. Rep. 598, wherein the wife of the circuit judge was a stockholder to the extent of fifty shares of the capital stock of the plaintiff bank at the time the case went to trial, it was contended by the defendant that the presiding judge was thereby disqualified as being related to a party interested in the case. The court said: "The wife of the judge of the circuit court, being the owner of one-tenth of the capital stock of the said bank, was, though not a party named in the record, directly interested in the result of the action; and it would seem to be an anomaly for her husband to sit as judge in a case where she was so directly interested, * * * and to preserve the purity of the courts and the confidence of the community in their fairness and in-

tegrity, that the judge so situated should be held disqualified."

The leading case on the very question now under consideration is that of Yazoo & M. Valley R. Co. v. Kirk, 102 Miss. 41, 58 So. 710, 713, 834, 42 L. R. A. (N. S.) 1172, Ann. Cas. 1914C, 968. In a well-considered opinion reviewing the leading cases, the Supreme Court of Mississippi adopted the view which we consider the soundest, and held a judge disqualified to sit in a divorce and alimony case, because he was related to an attorney for one of the parties. In the opinion, the Mississippi Supreme Court said: "Every litigant is entitled to nothing less than the cold neutrality of an impartial judge, who must possess the disinterestedness of a total stranger to the interests of the parties involved in the litigation, whether that interest is revealed by an inspection of the record or developed by evidence aliunde the record. The real parties in interest furnish the reason for the judge to recuse himself when it becomes known that they are related to the judge, although they may not be parties eo nomine."

In later cases, the Mississippi Supreme Court apparently adopts a narrower construction of the term "parties." In the case of Norwich Union F. Ins. Co. v. Standard Drug Co., 121 Miss. 510, 83 So. 676, 677, 11 A. L. R. 1321, the Mississippi Supreme Court said:

"We are asked in the present case to extend the rule so as to make the word 'parties' in the above statute include an attorney for the defendant, related as above stated, whose fee is a contingent one, even though he has no contingent interest in the subject-matter of the suit nor in the judgment to be entered. * * * We adhere to the rule announced in the Kirk Case, but decline to extend it further. We believe that the further extension of the meaning of this term, even if we had the power to enlarge upon the statute, would result in greater mischief than good. It is, of course, important that the trial judge be fair and impartial and removed from any improper influences in passing upon the rights of litigants, but to hold with the contention of the appellants would disorganize the judicial system of this state and result in practically unlimited special judges. * * *

"If the court should hold that a mere contingent fee, not rooted in the res, paid or agreed to be paid to a relative of the judge, would disqualify the judge, it would be within the power of the litigant to bring about the disqualification of the judge, even in this court, and even in criminal cases, and a litigant would never have to go to trial so long as he had means to employ attorneys related to the judge on a contingent fee. If this rule were established a man indicted for murder, or other felony, who did not want to stand trial, could wait until the case was called for trial, then employ on a contingent basis some attorney related to the trial judge by blood or marriage, suggest the disqualification of the trial judge, brought about by himself, and refuse to agree to a judge to try the case, and delay the case until a special judge was appointed by the Governor and qualified, and then might employ an attorney related to the special judge on simi-

lar conditions, and thus disorganize the judicial administration of justice to such degree and to such extent as to produce infinitely more mischief than mere relationship to the trial judge could possibly produce."

See, also, a recent case decided by the Supreme Court of Mississippi, Division B, Shireman v. Wildberger, 125 Miss. 499, reported in 87 So. 657.

The fantastic possibility of abuse of a sound constitutional principle, which prompted the Mississippi Supreme Court to depart from the rule in the Kirk Case, and a departure it is, does not find any sentiment with us.

Such chimerical and vagrant possibilities of abuse have often been urged against sound fundamental principles of common rights, but such objections should be addressed to the people who adopted the Constitution.

In the recent case of State ex rel. Hanna and Riddle v. Armijo, 38 N. M. 73, 28 P.(2d) 511, entered October 14, 1933, the possible abuse of Laws 1933, c. 184, was urged upon this court as a challenge to the constitutionality of the act. We reject such argument. We said: "He who assails a statute on the ground of unconstitutionality must point to a particular provision of the Constitution which it offends. Such general criticism as the foregoing may be more properly addressed to the Legislature."

We are constrained to follow the early decision of the Mississippi court. We believe that an attorney who had a case on a contingent fee is just as much a party pecuniarily interested in the result as is an attorney who is interested in the subject-matter, or res, of the suit. The interest in either case is more than a professional interest. His compensation or award depends upon a successful outcome of the case. He is pecuniarily interested in the result, and it is the pecuniary interest rather than a professional interest that makes of the attorney a party to the case.

If we are to give full force and effect to the high ideals of an impartial and unbiased judiciary, the strongest arm of our government, it is of the utmost importance that all doubt or suspicion that our courts are not impartial must be completely eliminated. The purpose of this provision in our Constitution is to secure to litigants a fair and impartial trial by an impartial and unbiased tribunal. Next in importance to the duty of rendering a righteous judgment is that of doing it in such manner as will beget no suspicion of the fairness or integrity of the judge. In the case of State ex rel. Hanna and Riddle v. Armijo, supra, we said:

"* * * And it is better that the courts shall maintain the confidence of the people than that the rights of judge and litigant in a particular case be served. * * * In this connection, it would be well to remember that the canons of judicial ethics adopted by the American Bar Association, 'as a proper guide and reminder for judges, and as indicating what the people have a right to expect of them,' * * * declare:

" 'Courts exist to promote justice and thus serve the public interest * * * he (the

judge) should avoid unconsciously falling into the attitude of mind that litigants are made for the courts instead of courts for the litigants * * * a judge's official conduct should be free from impropriety and the appearance of impropriety.' * * *

"There has been a wholesome recognition that human frailty may not be overcome by trained habits of impartiality, that human limitations of the presiding judge may result in the deprivation of a just hearing, and that the stimulation of public confidence in the integrity of the judiciary demands that the judge be not only actually fair minded, but above all suspicion to the contrary."

We cannot permit the feeling to be permeated among the people over whom we are called to judge that the scales of justice, which must balance evenly, can be tipped by aught but the weight of fact and law.

The emblematic form of the blinded goddess of justice—Justitia, who has often been called the jealous mistress, must hold the respect of her master, the people, over whom she holds aloft the scales untouched and the unsheathed sword to enforce her command. They must believe in her integrity. It is not only the idea in the administration of justice that a judge must be free from all bias and partiality, it is also the design of the law to ensure for their decisions the respect and confidence of the community. Their judgments should be as free from reproach as Caesar's wife, and must not only be fair, but free from suspicion of unfairness. The party may be interested only that his particular suit should be justly determined; but the state, the community, is concerned not only for that, but that the judiciary shall enjoy an elevated rank in the estimation of mankind.

In the instant case we hold that the term "parties" within the section of our Constitution in question, means every person who has a substantial pecuniary interest in the result of the lawsuit, whether mentioned in the pleadings or not.

We come now to the next question. By going to trial, did the defendant waive the disqualification?

We have held that our constitutional disqualification is not absolute. It may be waived, according to its very terms, by consent of all parties. In Gutierrez v. Middle Rio Grande Conservancy District, 34 N. M. 346, 282 P. 1, 4, 70 A. L. R. 1261, we said: "The foregoing constitutional provision contains no absolute disqualification. It confers a right upon the litigants which they may exercise or waive by consent. If a litigant chooses to avail himself of his constitutional right, then our procedure requires that some motion, objection, or other appropriate remedy be invoked calling the grounds of disqualification to the court's attention and demanding a ruling thereon."

That there was no express consent upon the part of the defendant is clear from the record. Though there is no express waiver or consent, was there an implied waiver or consent?

We have no statute governing the time and manner of raising objection, and waiver or-

dinarily will be presumed unless and until objection is made. Good faith as between the litigants and a proper regard for sound administration require that the right to object should not be made a means of gambling on the result. If it could be shown that a party "lay behind a log," he will be held to have waived the disqualification of the judge, and to have consented to his presiding in the cause.

In some jurisdictions it is held that the statute disqualifying the judge deprives him of all jurisdiction, and for this reason his acts are absolutely void.

See cases cited in notes 5 A. L. R. 1588 and 57 A. L. R. 292.

These decisions are usually based on the peculiar language of the statutes construed, and which, as a general proposition, by their very terms disqualify the judge when his own interest, or the interests of a relative, may be affected by the decisions of the judge; and for this reason his judgment is entirely incapable of being made good, even by express consent. It will be noted that our Constitution provides that the disqualification may be waived by consent.

Had it been affirmatively shown in this case that the defendant had taken his chance of a favorable judgment at the hands of a judge, who, he knew, was personally disqualified, we would not permit him to avail himself of facts which he knew before the judgment was rendered to get rid of it. In other words, litigants cannot take their chances of a favorable decision with a judge, who,

they know, is disqualified to sit in the case, reserving the right to set the judgment aside, if it appears to their advantage to do so. See Washington F. Ins. Co. v. Hogan, 139 Ark. 130, 213 S. W. 7, 5 A. L. R. 1585.

In this particular case, the relationship between judge and counsel was certainly known. It was a case of that class in which contingent fees are not infrequent. The facts might have been discovered on inquiry. But a counterdoctrine presses in the instant case with superior force. There was a higher duty imposed on the attorney for plaintiff, the son of the trial judge, at the beginning of the trial to disclose the facts and secure the consent of opposing counsel to Judge Patton hearing the case.

The facts were called to the attention of the court by the motion for a new trial, and while the case was still within his control. The defendant and his attorney allege they did not know of the interests of plaintiff's attorneys in the litigation until after the trial. This allegation was not denied by plaintiff, though defendant offered no proof in support of this allegation, yet not being denied, we must accept it as true.

We do not impute to Judge Patton in the slightest any improper motive for conducting the trial of the said cause, or believe for a moment that the fact that his son was interested could or did influence his decision in the case, or that Judge Patton even knew the nature of his son's employment. The action of Judge Patton in immediately recusing himself when the motion was filed is commendable.

The good faith of counsel for plaintiff cannot be questioned. Governor Hockenhull, Senator Hatch, and Perkins L. Patton are respected and honored members of the bar of this state. They could readily have stood their position on the questions here determined, which have ample support in many jurisdictions, but on the contrary have not been technical about this charge and have not sought to argue the law involved, but have simply stated the facts into the record and have subjected themselves to whatever ruling this court may care to make.

It is a matter of public policy. It is not the avoidance of evil, but the shunning even of the appearance of impropriety that prompts us to adopt these views. We believe that it is within the spirit of our Constitution, and that the prohibitions of article 6, § 18, are plainly intended not only for the protection of the parties to a suit merely, but for the general interests of justice by preserving the purity and impartiality of the courts, and the respect and confidence of the people of their decisions.

In the instant case, we have disposed of the other errors charged, that the cause may be retried without doubtful questions being undetermined.

For the reasons herein stated, the judgment will be reversed and the cause will be remanded, with directions that the defendant's motion for new trial be granted.

It is so ordered.

WATSON, C. J., and SADLER, HUDSPETH, and BICKLEY, JJ., concur.