[S. F. No. 18835. In Bank. Dec. 15, 1953.]

THE PEOPLE, Appellant, v. PASQUALE LA MACCHIA et al., Defendants; RALPH B. FILICE et al., Respondents.

740

Robert E. Reed, Holloway Jones, Jack M. Howard, Roger Anderson and Edward L. Doyle for Appellant.

J. Oscar Goldstein, P. M. Barceloux, Burton J. Goldstein, and Goldstein, Barceloux & Goldstein for Respondents.

EDMONDS, J.—For the purpose of constructing a freeway, the state is condemning certain land bordering the presently existing highway, which is to be widened. Along each side of the freeway there will be a fence cutting off access to it except through 20-foot openings at certain points.

There are five parcels of land involved in the state's appeal from the judgment awarding damages to the owners. These parcels have a frontage on the present highway of from 260 to 5,000 feet. On the land having the 5,000-foot frontage, there are to be three 20-foot openings in the fence at convenient points. One 20-foot opening is to be provided for each of the other parcels. The land to be taken for inclusion in the freeway ranges from less than one foot to 60 feet in width. The area of four of the parcels varies from 10 to 38 acres; the largest one has 1,245 acres.

The experts called by the state and those who testified for the owners placed substantially the same values on the land taken. However, they varied markedly on severance damages. That was occasioned principally by a difference of opinion as to the highest and best use of the land along the highway, which was being used for agricultural purposes with the usual improvements relating to farming and fruit growing. The state's witnesses based their opinion as to the amount of severance damages primarily upon the loss of agricultural utility and loss of convenience of agricultural operations for 20 feet from the freeway fence, with certain allowances for rearrangements of existing improvements. The owners and their experts testified that at least a portion of the land presently is adaptable and suitable for commercial development but cannot be used for such purpose with the restricted access planned by the state.

According to the state, the severance damages are grossly excessive, and were allowed because of errors in evidentiary rulings and the instructions. The property owners maintain that the rulings and instructions were correct, and in any event not prejudicial.

One of the issues is whether the trial court erroneously and prejudicially curtailed the state's cross-examination of the property owners' witnesses. ██ "The field of inquiry in cross-examination for the purpose of testing the credibility of a witness and the weight of his testimony is so extensive that the trial court must be given wide discretion in order to keep such examination within reasonable bounds; otherwise the trial of cases would be overlong. ██ When an appellate court is called upon to decide whether such discretion has been abused, the inquiry is whether a sufficiently wide range has been allowed to test such credibility and weight rather than whether some particular question should have been allowed." (*East Bay Mun. Utility Dist.* v.

*Kieffer,* 99 Cal.App. 240, 261 [278 P. 476, 279 P. 178].) The state is complaining of seven rulings in some 240 pages of the cross-examination of three experts. No useful purpose would be served by stating the specific questions which, it is claimed, should have been permitted, for each is peculiar to the circumstances of this case. The record shows that the state's objections are not well taken. The trial judge allowed wide latitude in the cross-examination of the witnesses, and in bringing certain lines of inqury to a close there was no abuse of discretion.

The state's second contention is that the trial court erred in admitting evidence relating to an offer to purchase a portion of the property owned by Ercole and Rafaella Pelliccione. Upon direct examination Ercole Pelliccione testified that he valued his property before the taking at $105,000. Asked the "reason for that opinion," he stated, "The reason is the frontage—it's almost 700 feet—I had on Monterey Road, that is all business property. The people, they asked me in 1947, they wanted to buy it." The state interposed an objection upon the grounds of irrelevancy and incompetency, which the trial court overruled. Pelliccione continued: "In 1947 I was contacted by some people, they wanted to buy one acre right there where the big oak tree was, to build a motel, and they offered me $7,000. . . ."

This answer placed before the jury testimony which may not be elicited upon direct examination. ■ The long established rule in this state is that witnesses "cannot, upon the direct examination, be allowed to testify as to particular transactions, such as sales of adjoining lands, how much has been offered and refused for adjoining lands of like quality and location, or for the land in question, or any part thereof, or how much the . . . [condemning party has] been compelled to pay in other and like cases—notwithstanding these transactions may constitute the source of their knowledge." (*Central Pac. R. R. Co.* v. *Pearson,* 35 Cal. 247, 262.) The courts have neither deviated nor retreated from this rule. (*City of Los Angeles* v. *Hughes,* 202 Cal. 731, 736 [262 P. 737]; *Estate of Ross,* 171 Cal. 64, 65-66 [151 P. 1138]; *Atchison, T. & S. F. R. Co.* v. *Southern Pac. Co.,* 13 Cal. App.2d 505, 512 [57 P.2d 575]; *Hibernia Sav. etc. Soc.* v. *Ellis Estate Co.,* 132 Cal.App. 408, 411 [22 P.2d 806]; *City of Los Angeles* v. *Deacon,* 119 Cal.App. 491, 493-494 [7 P.2d 378]; *Merchants' Trust Co.* v. *Hopkins,* 103 Cal.App. 473, 478-479 [284 P. 1072].)

In an early case this court pointed out that to allow evidence of particular transactions to be presented on direct examination would open up each transaction as a side issue and the invesitgation would be rendered interminable. (*Central Pac. R. R. Co.* v. *Pearson, supra,* at p. 262.) ▮ Upon cross-examination, however, such evidence is admissible for the sole purpose of discrediting the opinion of the witness (*Central Pac. R. R. Co.* v. *Pearson, supra,* at p. 262; *Reclamation Dist. No. 730* v. *Inglin,* 31 Cal.App. 495, 500 [160 P. 1098] ; *Los Angeles Gas & Elec. Corp.* v. *Etienne,* 83 Cal.App. 645, 647 [257 P. 123]), but it may not be considered for the purpose of fixing the value of the land in dispute. (*Estate of Ross, supra,* at p. 66; *Reclamation Dist. No. 730* v. *Inglin, supra,* at p. 500.)

The owners assert, however, that evidence of an offer to purchase the property desired by the state may be presented upon direct examination as a reason for the opinion of the witness. ▮ It is clear that one who has given his opinion as to the value of certain property may, upon direct examination, state the reasons upon which it rests. (*Long Beach City H. S. Dist.* v. *Stewart,* 30 Cal.2d 763, 773 [185 P.2d 585, 173 A.L.R. 249].) But the facts stated as reasons do not become evidence in the sense that they have independent probative value upon the issue as to market value. (*Thornton* v. *Birmingham,* 250 Ala. 651 [35 So.2d 545] ; 32 C.J.S., Evidence, § 521, p. 219.) Instead, they serve only to reinforce the judgment of the witness, that is, they go to the weight to be accorded his opinion. (See *Long Beach City H. S. Dist.* v. *Stewart, supra,* at p. 773.) ▮ As said in *Peirson* v. *Boston El. R. Co.,* 191 Mass. 223 [77 N.E. 769] : "[T]here is no right to put in evidence of matters which are incompetent as substantive evidence for the purpose of fortifying the opinion of an expert witness, even though they are offered under the guise of the reasons for his opinion, and even though they might properly have been admitted on cross-examination to test and diminish the weight to be given to his opinion." (Pp. 233-234.) The rule is similarly expressed in *United States* v. *25.406 Acres of Land,* 172 F.2d 990, 993, and Nichols states it in substantially the same language. (5 Nichols on Eminent Domain [3d ed.] § 18.45 [1], p. 181.)

▮ The general rule which permits a witness to state the reasons upon which his opinion is premised may not be used as a vehicle to bring before the jury incompetent evi-

dence. To so open up the inquiry would create a disastrous break in the dike which stands against a flood of interminable investigation. ■ Upon direct examination, a witness never should be allowed to go into the details of particular offers for the property being condemned or specific sales or transactions in connection with other property. (*Reclamation Dist. No. 730* v. *Inglin, supra,* at p. 500.)

The property owners urge that a distinction must be made between a witness such as Pelliccione, who is an owner of one of the properties being taken by the state, and the witness who testifies as an expert. They argue that the scope of the direct examination of the expert is more limited than that of a property owner. However, there is no logical ground for any such distinction. ■ "All that is necessary to be shown to entitle a witness to give an opinion is to show 'that he has some peculiar means of forming an intelligent and correct judgment as to the value of the property in question . . . beyond what is presumed to be possessed by men generally.'" (*Spring Valley W. W.* v. *Drinkhouse,* 92 Cal. 528, 534 [28 P. 681].) ■ The usual expert is qualified by proof of his familiarity with the property and with other property in the neighborhood, his experience in the business, his familiarity with the state of the market and of sales of similar property in the vicinity. (*Estate of Ross, supra,* at pp. 66-67.) ■ A property owner, on the other hand, is generally considered competent to estimate the value of his property upon a showing that he has resided thereon for a number of years. (*Long Beach City H. S. Dist.* v. *Stewart, supra,* at p. 772; *Spring Valley W. W.* v. *Drinkhouse, supra,* at p. 534.)

■ The state did not challenge Pelliccione's competency, and he was entitled to state upon direct examination the reasons for his opinion as to the worth of his property. (*Long Beach City H. S. Dist.* v. *Stewart, supra,* at p. 773.) Those reasons could be no broader than those of any other witness qualified to state an opinion. ■ Ownership with residence on the land for a reasonable time established his qualification to testify, but it did not extend the scope of the inquiry upon direct examination. Evidence of an offer to purchase is nonetheless collateral, and as productive of delay and confusion, when it is brought before the jury by the owner as it would be if it were presented by an expert on land values.

In *Peirson* v. *Boston El. R. Co., supra,* a property owner had been permitted to relate upon his direct examination the details of offers to purchase his property. It was held that the rule permitting a witness to state the reasons underlying an opinion did not afford the owner a means for in· troducing otherwise incompetent evidence on the ultimate question of value, and that the testimony relating to offers to purchase was therefore improperly admitted. ▮ Clearly, therefore, a property owner and an expert witness are in a different position only insofar as their qualifications to testify rest upon different bases. In stating his opinion as to the value of property, the owner is bound by the same rules of admissibility of evidence as is any other witness.

*Long Beach City H. S. Dist.* v. *Stewart, supra,* does not hold to the contrary. In that case, an objection was sustained to a question asking an owner upon what he based his opinion as to value. "[T]here is not the slightest indication in the record or in the briefs concerning the nature of the testimony which appellant would have given in reply to the question" (p. 774). Under such circumstances it was decided that he "should have been permitted to state the reasons for his opinion on market value."

▮ Although the evidence now challenged was inadmissible, the error did not prejudice the state. The offer to purchase constituted a small part of all the evidence before the jury on the value of Pelliccione's property (*cf. Railway Co.* v. *Southern Pac. Co., supra,* at p. 513), and from the record as a whole it does not appear that mention of the offer for only a portion of the land influenced the verdict to any substantial extent. (*Cf. Reclamation Dist. No. 730* v. *Inglin, supra,* at pp. 500-501.)

Another asserted violation of the rule prohibiting evidence as to offers to purchase occurred during the cross-examination of the owners' witness Challen. A question of counsel for the state was, "[S]o do I understand that in your opinion this highway frontage on these parcels would be around seven, eight thousand dollars an acre if placed upon the open market for sale?" Challen replied, "I investigated one parcel here that I had heard an offer had been made on . . . , as a matter of fact, Mr. Pelliccione was offered $7,000 for 200 feet." In denying a motion to strike out the statement upon the ground that it was not responsive, the court said, "[I]t's explanatory of his answer."

In its briefs the state challenges this testimony upon the sole ground that it violates the rule against the admission of offers to purchase. But the questioning was upon cross-examination, and evidence of an offer may properly be presented at such time for the purpose of testing the weight to be accorded an opinion as to value. Under the circumstances shown by the record the trial court properly refused to strike the testimony. (*Cf.* Code Civ. Proc., § 2052.)

Upon redirect examination of Challen, he was interrogated concerning the offer as to the acreage and contemplated use of the property. Over objection upon the ground that the information was incompetent, irrelevant and immaterial, Challen stated that it was for an area about 200 by 200 feet to be used for a service station. That statement added little to the facts brought out on cross-examination. However, Challen also said that Pelliccione had been approached in negotiations for a motel site on the same property. Challen made no mention of the prices offered, but said that all of the owners had refused similar offers ''even at the prices they were offered . . . because they wanted that free ingress and egress that they have had prior to the installation of that fence.''

Although, as a general proposition, a witness upon his examination in chief should not be allowed to go into the details of particular sales or transactions (*Reclamation Dist. No. 730* v. *Inglin, supra,* at p. 500), the core of inadmissibility is the consideration. (*San Francisco* v. *Tillman Estate Co.,* 205 Cal. 651, 656 [272 P. 585] ; *Estate of Ross, supra,* at p. 67.) Where no price is mentioned, the rule laid down in *Central Pac. R. R. Co.* v. *Pearson, supra,* does not apply. (*San Francisco* v. *Tillman Estate Co., supra,* at pp. 656-657.)

Another contention is that evidence of the sales of other property was erroneously admitted. In cross-examination of two of the owners' expert witnesses, the state brought out the prices at which various other properties in the vicinity had been sold. Those prices were considerably lower than the values placed by each of the witnesses upon the land being condemned. Upon redirect examination, and over the state's objection, the witness was permitted to state the various facts which, in his opinion, tended to reconcile the prices paid for other land with the valuation he had given. Such inquiry, it is urged, should not have been allowed.

The amount paid for other land may not be presented to the jury upon redirect examination where it is offered as independent proof of value. (*Reclamation Dist. No. 730 v. Inglin, supra,* at p. 500.) However, section 2050 of the Code of Civil Procedure provides, in part: "A witness once examined cannot be re-examined as to the same matter without leave of the court, but he may be re-examined as to any new matter upon which he has been examined by the adverse party." Certainly, factors going to the weight to be accorded an expert opinion constitute "new matter" within the meaning of this statute. Also, upon general principles, it is proper to permit a witness to state facts and circumstances tending to correct erroneous inferences which may have been drawn from his testimony upon cross-examination. (*Pedley* v. *Doyle,* 177 Cal. 284 [170 P. 602]; *Myers* v. *Rose,* 27 Cal.App.2d 87, 89 [80 P.2d 527]; *People* v. *Corey,* 8 Cal.App. 720, 725 [97 P. 907]; 2 Wigmore on Evidence [3d ed.] § 463, p. 512.)

With one exception, the many cases cited by the state in support of its position do not state a contrary rule. Some of them concerned the propriety of such evidence upon direct examination (*City of Los Angeles* v. *Hughes, supra,* at p. 736; *Estate of Ross, supra,* at pp. 65-66; *Hibernia Sav. etc. Soc.* v. *Ellis Estate Co., supra,* at p. 411; *City of Los Angeles* v. *Deacon, supra*); in another, the court was concerned with the question of whether there was competent evidence of the substantive inquiry as to value (*Merchants Trust Co.* v. *Hopkins, supra,* at pp. 478-479). *Dickey* v. *Dunn,* 80 Cal.App. 724, 728 [252 P. 770], and *Thompson* v. *Stoakes,* 46 Cal.App. 2d 285, 292-293 [115 P.2d 830], concerned evidence of sale of the identical property in question, but in *Bagdasarian* v. *Gragnon,* 31 Cal.2d 744, 758 [192 P.2d 935], the Thompson case was expressly overruled on that point.

In *Reclamation Dist. No. 730* v. *Inglin, supra,* it does not appear whether the redirect examination was properly limited to the specific sales brought out upon cross-examination. In any event, apparently it was argued on the appeal that such evidence was admissible for the purpose of fixing the value of the land in dispute, and was not correctly tendered for the sole purpose of explaining the factors surrounding the sales which tended to diminish the weight to be accorded the witness' opinion. In *Palladine* v. *Imperial Valley F. L. Assn.,* 65 Cal.App. 727, 756 [225 P. 291], the testimony was elicited upon cross-examination and the question presented

was the propriety of refusing an instruction limiting the evidence to the purpose of testing the witnesses' knowledge and discrediting their opinions.

The single case apparently standing for the rule asserted by the state is *Atchison, T. & S. F. R. Co.* v. *Southern Pac. Co.*, 13 Cal.App.2d 505 [57 P.2d 575]. In that decision the trial judge permitted an expert witness to testify upon redirect examination concerning the significant features of the sales of other properties which had been mentioned during the course of the cross-examination. In addition, the court had allowed "[q]uestions as to whether or not property in the general locality of the property sought to be condemned had increased in value. . . . This class of questions included all property in the general locality in the case of some of the questions, and in the case of other questions involved only particular pieces of property in the locality." (P. 511.) As to the questions which were outside the scope of the cross-examination, it was properly held that the evidence was inadmissible. And upon the assumption that the field of inquiry was the same as upon direct examination, the court included as inadmissible the testimony as to specific sales which was given upon cross-examination. For these reasons the decision does not support the state's contention.

Complaint is also made of the admission of certain evidence relating to the purposes motivating the owners to purchase their properties, and to plant certain crops. Such testimony, it is said, violates the principle that the true and only criterion of damages is market value, and not the value in use to the owner, either actual or prospective.

Upon cross-examination of Challen, he volunteered information that one of the owners "planted diversified fruit for the purpose of selling . . . retailing right from his property there." A motion to strike was denied. Over objection that it was "incompetent, irrelevant and immaterial," owner Ernest Filice was permitted to testify upon direct examination that "the sole purpose" in purchasing the property was the location of the property on United States Highway 101. Over the same objection he also was permitted to state that the main reason he purchased the property was "on account of that frontage in front and with the good visibility we had in mind at some future date to take advantage of the uses, commercial uses . . . to erect some kind of a business on that frontage, whether either a gas station or a restaurant or fruit stand." Ercole Pelliccione, coowner of another par-

cel, over objection, was allowed to state his intention to build a motel on his property, and that he planted two acres of cherries in order to sell them at retail to travelers on the highway.

 This court "has definitely aligned itself with the great majority of the courts in holding that damages must be measured by the market value of the land at the time it is taken, that the test is not the value for a special purpose, but the fair market value of the land in view of all the purposes to which it is naturally adapted; that therefore while evidence that it is 'valuable' for this or that or another purpose may always be given and should be freely received, the value in terms of money, the price, which one or another witness may think the land would bring for this or that or the other specific purpose is not admissible as an element in determining that market value." (*Sacramento etc. R. R. Co.* v. *Heilbron,* 156 Cal. 408, 412 [104 P. 979].) "In ascertaining the market value of real property any evidence which tends to show the physical condition of the property, the purpose for which it is employed, or any reasonable use for which it may be adapted, is competent." (*City of Los Angeles* v. *Cole,* 28 Cal.2d 509, 518 [170 P.2d 928], quoting with approval from *City of Beverly Hills* v. *Anger,* 127 Cal. App. 223, 228 [15 P.2d 867].)

 But evidence as to what the owner intended to do with the land cannot be considered. (*People* v. *Marblehead Land Co.,* 82 Cal.App. 289, 301 [255 P. 553]; *Los Angeles* v. *Kerckhoff-Cuzner Mill. & Lbr. Co.,* 15 Cal.App. 676, 677 [115 P. 654].) For there can be no allowance for enhanced damage which an owner "would suffer by reason of being prevented from carrying out a particular scheme of improvement, existing only in contemplation at the time of the trial." (*Los Angeles* v. *Kerckhoff-Cuzner Mill. & Lbr. Co., supra,* at p. 688.) However, under certain circumstances, evidence that a proposed use would result in a profit is admissible, "not for the purpose of enhancing the damages by showing the loss to the owner of a particular plan of operation, but to show that such proposed plan is a feasible plan and should be considered in fixing market value." (*City of Daly City* v. *Smith,* 110 Cal.App.2d 524, 532 [243 P.2d 46]; and see *United States* v. *25.406 Acres of Land, supra,* at p. 994.)

Here, a portion of the testimony complained of was admitted in the course of a line of questioning indicating that

it was offered as a description of the uses to which the properties were adaptable. But the majority of it comes squarely within the rule which prohibits the admission of evidence concerning an owner's purposes with regard to his property.

However, to a considerable extent, any prejudice resulting from the erroneous admission of the evidence was offset by other testimony similar in character which was received without objection. (See *Mullanix* v. *Basich*, 67 Cal. App.2d 675, 679 [155 P.2d 130].) For example, Challen testified: "I happen to know that the owner [of parcel 4] has put in a very diversified orchard in there, in order to sell his commodities on the highway, which proves the fact that that property does have commercial value; and . . . [the other landowners] . . . bought their property [for the same reason]."

In this connection, the jury was instructed: "Whatever the purpose the Defendants had in connection with the future use of the property, can add nothing to its market value. The fact that this purpose is defeated by condemnation, however much a disappointment, is not a matter of compensation. A use existing or contemplated on property is distinct from the market value of the property itself and is not the conclusive basis for fixing such market value, and is not to be considered as determining the value of the land. Value in use is not to be considered by you as determining the market value of the property. A plan which Defendants may or may not have had for the improvement of the property adds nothing to the market value. The fact that a plan for the improvement, if any, was affected by condemnation, however much a disappointment, is not a matter of compensation." It must be assumed that the jury understood such clear and unambiguous language and correctly applied the instructions to the evidence. (*Nunneley* v. *Edgar Hotel*, 36 Cal.2d 493, 500 [225 P.2d 497]; *Henderson* v. *Los Angeles Traction Co.*, 150 Cal. 689, 697 [89 P. 976].)

Next, the state attacks the instructions concerning the existing right of access to the highway in which the jury was told that the owner of abutting land has a private right in such highway distinct from that of the public for the purpose of access to and egress from his land. This right, the instruction stated, cannot be taken from the landowner without just compensation. The state complains of the trial judge's failure to add that the right of access is limited to that which is reasonable for the purposes to which the property is

adapted. Instead, it is argued, the instruction informs the jury that the right of access is an unqualified and unlimited one and not subordinate to normal highway uses.

On this subject the state requested and the court refused an instruction stating that an abutting owner has no right to insist upon the construction of a road in such a manner that he may travel directly from the highway to any portion of his adjoining land. The jurors might well have been told that "[t]he extent of the easement of access may be said to be that which is reasonably required giving consideration to all the purposes to which the property is adapted" (*Bacich* v. *Board of Control,* 23 Cal.2d 343, 352 [144 P.2d 818]). But they were instructed that only when the condemnation destroys or substantially impairs the right of access is an owner entitled to compensation therefor. Considering the instructions as a whole, they fairly state the controlling principles.

The state also complains of the charge to the jury in which it was said : "Owners are presumed to know the value of their property, and being permitted under the law to testify thereto, their evidence in that regard is entitled to be weighed and considered by the jury." This instruction, as read by the state, informs the jury that the testimony of an owner is entitled to greater weight than that of other witnesses on value. Although the word "presumed" should not have been used, it is significant that the awards are far below the value placed by the owners upon their respective properties. Moreover, the record shows instructions which state that the final responsibility for determining the amounts to be awarded rests with the jurors, and it is their duty to evaluate and weigh the testimony of witnesses who stated their opinions as to values.

Next, the state maintains that it was error to instruct the jury "if possible, to reconcile the conflicting testimony and to give it all due weight." The state argues that in view of the wide discrepancy in the estimates of value and damage by witnesses for the respective sides, it is clear that the opinions were irreconcilably conflicting, and the effect of the instruction was to tell the jury to "cut somewhere in between" divergent amounts. However, "Upon the trier of fact rests the responsibility to reconcile, if possible, any apparent conflict, whether the same arises upon the entire case or in the testimony of a single witness, and to effectuate all the evidence, when the nature of the case will admit of such a disposition."

(*Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702, 708 [242 P. 703]; *Boens* v. *Bennett*, 20 Cal.App.2d 477, 483 [67 P.2d 715].)

Finally, the state contends, the jury was erroneously advised that, in ascertaining market value, the purpose for which the property was being taken by the state could be considered. ▉ Compensation is based on loss imposed on the owner, rather than on benefit received by the taker. (*Boston Chamber of Commerce* v. *Boston*, 217 U.S. 189, 195 [30 S.Ct. 459, 54 L.Ed. 725]; Orgel on Valuation Under Eminent Domain, § 79, p. 257.) The beneficial purpose to be derived by the condemnor's use of the property is not to be taken into consideration in determining market values, for it is wholy irrelevant. (*City of Stockton* v. *Vote*, 76 Cal. App. 369, 400 [244 P. 609].) ▉ But the jury in the present case also was told: "Although the market value of the property is to be determined with due consideration of all its available uses, its special value to the State as distinguished from others who may or may not possess the power to condemn, must be excluded as an element of market value." In view of that concise statement of the law, the erroneous language in the other instruction could not have influenced the awards. Furthermore, and most significant, there is no evidence in regard to the value of the use to the state for highway purposes, and the jury received the usual instruction to award compensation "in accordance with the evidence in this case."

Although some of the rulings and instructions were erroneous, it cannot reasonably be said that, upon examination of the entire record, there has been a miscarriage of justice requiring reversal of the judgment. (Cal. Const., art. VI, § 4½.)

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Spence, J., concurred.

TRAYNOR, J., Concurring and Dissenting.—I concur in the judgment. Nevertheless I must protest the obsolescent rule, reaffirmed by the majority, that the value of real property cannot be proved by evidence of sales of comparable real property. Only a few courts follow it, and their number diminishes. The most recent to abandon the rule are the Court of Appeals of New York and the Supreme Court of Nebraska. (*Village of Lawrence* v. *Greenwood*, 300 N.Y. 231 [90 N.E.2d 53, 56]; *Langdon* v. *Loup River Public Power*

*Dist.*, 142 Neb. 859 [8 N.W.2d 201, 206].) It has withered under the devastating attacks on it. (See Wigmore, Evidence [3d ed.], § 463, p. 503 et seq.; 174 A.L.R. 386; 118 A.L.R. 870; 32 C.J.S., Evidence, p. 444 et seq.; *City of Los Angeles* v. *Cole*, 28 Cal.2d 509, 517 [170 P.2d 928] [dissent]; *Heimann* v. *City of Los Angeles*, 30 Cal.2d 746, 760 [185 P.2d 597] [dissent].) Why bolster it when it is doomed?

Admittedly such evidence, which everyone uses to determine value, is relevant; so relevant that it is hardly credible that it would be excluded. It is conceded that on cross-examination a witness may be questioned as to his knowledge of sales of comparable property. (*City of Los Angeles* v. *Cole, supra*, 28 Cal.2d 509, 518.) On redirect examination he may be questioned regarding such sales in relation to the valuation that he gave on direct examination. (See majority opinion herein disapproving *Atchison, T. & S. F. R. Co.* v. *Southern Pac. Co.*, 13 Cal.App.2d 505 [57 P.2d 575].) Why is there no concern about collateral issues on cross or redirect examination and concern of phantom proportions on direct examination? The magnified risk of collateral issues must be balanced against the reality of inevitable confusion when jurors hear evidence of the greatest relevance and are then told that they cannot base the value of the property on that evidence.

The trial court has ample power to keep the trial under control. As the New York Court of Appeals noted in its opinion overruling earlier cases, ''Instances there may be where proof of sales of comparable property may prompt a line of inquiry which will develop collateral issues likely to confuse the fact-finders and prolong the trial. We regard such disadvantages, however, as more than compensated by the benefit to be gained by the receipt of such evidence subject to the exercise, by the tribunal which fixes value, of its discretionary power to draw the line of exclusion wherever confusion is caused by collateral issues.'' (*Village of Lawrence* v. *Greenwood, supra*, 90 N.E.2d 53, 56.)

In the present case the owner testified, not to an actual sale of comparable real property, but to an unaccepted offer to buy the property in question. Most courts that admit evidence of sales of comparable property hold that evidence of an unaccepted offer is not of sufficient probative value to justify admission. (See 7 A.L.R.2d 781.) Other courts, however, admit such evidence, if the offer is shown to be bona fide and a sufficient foundation is laid. (*Chicago* v. *Lehmann*, 262

Ill. 468, 474 [104 N.E. 829]; *Tharp* v. *Massengill,* 38 N.M. 58, 62 [28 P.2d 502, 94 A.L.R. 726]; see *Union Nat. Bank* v. *Crump,* 349 Pa. 339, 343 [37 A.2d 733].) It is my opinion that when, as here, the offer is bona fide and is for the identical property, and is by a purchaser able and willing to buy, evidence of the offer should be admitted. Accordingly, the trial judge ruled correctly that the witness could mention the offer for his property in giving the reasons for his valuation. (See *Long Beach City H.S. Dist.* v. *Stewart,* 30 Cal.2d 763, 773 [185 P.2d 585, 173 A.L.R. 249].)

Carter, J., and Schauer, concurred.