[S. F. No. 1173. Department One.—June 6, 1899.]

HELEN ELEANOR HUTCHINSON et al., Respondents, v. JOSEPH W. HUTCHINSON, Appellant.

PARENT AND CHILD—ABUSE OF PARENTAL AUTHORITY—ACTION BY CHILD FOR FREEDOM AND SUPPORT—CONSTRUCTION OF CODE.—Section 203 of the Civil Code, authorizing an action by a child to be freed from the dominion of a parent, for abuse of parental authority, and to enforce the duty of support and education, is enacted for the benefit and protection of the children; and the first consideration of the trial court in such an action should be the welfare of the children.

ID.—ACTION BY DAUGHTERS—SUFFICIENCY OF EVIDENCE—LOSS OF CONTROL BY FATHER—CRUEL TREATMENT.—In an action by twin daughters aged sixteen years, whose mother was dead, to be freed from the dominion of their father, evidence showing that he had lost their confidence and the power to control them as the result of cruel treatment, and that, without any showing that he had some other suitable place for them, he sought to take them against their will from the home of a woman who could control them, and who found them gentle and obedient, and who had received them with his consent from a training home in which he had left them, under a promise by him to pay her a monthly allowance for their support, is sufficient to sustain a finding of abuse of parental authority, and to support a judgment in their favor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion.

William T. Satterwhite, and O. F. Meldon, for Appellant.

Robert Price, Walter S. Braun, and L. G. Burnett, for Respondents.

GRAY, C.—The respondents are the twin daughters of defendant. Their age at the time of the trial was sixteen years. They base this action against their father upon section 203 of the Civil Code, which provides as follows: "The abuse of parental authority is the subject of judicial cognizance in a civil action brought by the child . . . . and when abuse is established the child may be freed from the dominion of the parent, and the duty of support and education enforced." The judgment is that plaintiffs be freed from the parental dominion of their father, and that he pay to their guardian twenty-five dollars a month for their support and education. From this judgment and from an order denying a new trial defendant appeals.

The evidence shows that defendant is a hard-working man, a machinist by trade, and as such earns from sixty to eighty dollars a month; that his wife died some ten years before the trial of this case, and that since her death he has had sole care of plaintiffs until they ran away from home; that his family, of late years, has consisted of these two girls and his son Willie, who was some ten or twelve years of age at the time of the trial; that defendant, by reason of his occupation, was necessarily away from home much of the time. In December, 1895, the father was obliged to leave his home in San Francisco and remain absent from the city for several months. During such absence the daughters drew his wages from his employer and invested much of them in clothes and theater tickets. When the father returned and learned of this he upbraided his daughters, whipped them, and sent them to bed. On the next morning he again whipped them and kicked one of them because they did not have breakfast ready at the usual time. They then decided to run away and hid themselves in the basement of their dwelling, where they stayed three days, after which they went to the Orlando House, and after staying there one night they were arrested by the police and taken to the police station, and from there the father took them home, accused them of having men with them at the Orlando House, which they stoutly denied, struck them with his hand and sent them to bed. A few days after this, in March, 1896, the defendant missed a silver watch and inquired of the daughters concerning it; their answers were unsatisfactory to him, whereupon he charged them with lying

and gave them an unmerciful beating, using therein a cane and a poker. The plaintiff Helen testifies that in the course of this beating the defendant took her by the throat and knocked her on the floor, kicked her on the side, and punched her in the stomach with his fist and left her partially unconscious. The next morning the daughters ran away again and lived for three weeks thereafter under the stairs leading to an empty house on Folsom street, when they were again taken in charge by the police and conveyed to the city prison at the New City Hall. The defendant called on them there and told them he would not take them home again, but would turn them over to the police authorities. Their father now becoming discouraged in his efforts to keep his daughters under control, they were, by his consent, taken to the Hill home, from which place early in June, 1896, they were taken by their guardian *ad litem* herein, Mrs. Burnett, to her home on Broadway street in San Francisco, their father agreeing to pay her twenty-five dollars a month for their support. From that time down to the commencement of this action, some four months later, the children remained with Mrs. Burnett, to whom they have become much attached, and she desires them to remain with her. She testified that the children are mild mannered and gentle and seem to be much in fear of their father. The father and daughters have been on friendly terms and have gone walking together and have corresponded, and he has visited them since they have been with Mrs. Burnett, but it appears he finally concluded that Mrs. Burnett was trying, in his own language, "to rule over" him in the matter of what the children should wear, and he threatened and intended to take the children away from her against the will of all concerned except himself. There is also evidence tending to show that a short time prior to the children running away the defendant had thrown a tea-cup at one of them and had struck one of them with a hammer, and at another time had thrown a frying-pan at one of them, that he frequently whipped them with a leather strap about eighteen inches long, an inch wide, slitted at the ends, and denominated a "cat-o'-nine-tails." It also appears from defendant's testimony that this strap had been a cherished instrument of punishment in the family from the infancy of defendant's oldest child, now

a young man some twenty-five or twenty-six years of age. It further appeared that from the whippings and beatings they received the girls sustained black and blue spots, bruised, swollen, and sore places on their bodies.

On this evidence the court found, as to defendant's treatment of plaintiffs, as follows: "That plaintiffs are mild, gentle, well-behaved and obedient children. That defendant has not, at all times, treated the plaintiffs herein with the utmost kindness and affection, but, on the contrary, that he has cruelly and brutally chastised them without sufficient cause, and in a manner wholly unnecessary to the enforcement of proper discipline. That the allegation in defendant's answer that he administered to said plaintiffs moderate and reasonable chastisement in order to induce them to speak the truth concerning the whereabouts of a certain watch, which he believed them to have stolen, is untrue; but, on the contrary, on this occasion defendant cruelly and brutally kicked and beat said plaintiffs, in a manner wholly unnecessary to attain the ends which he sought. That defendant has abused his parental authority over said children in this, that at various and numerous times during the months of February and March, 1896, he brutally, cruelly, unnecessarily, and with undue severity, beat, struck, and otherwise abused and maltreated them; that in said maltreatment, beating, and abuse he used his closed fists, a tea-cup, a frying-pan, a strap, a cane, an iron hammer, an iron stove-poker, and a cat-o'-nine-tails."

It is argued on this appeal that the findings do not support the judgment, that there is no finding of facts as to the abuse of parental authority, and that the evidence does not support the findings. The judge of the trial court had all the parties interested before him, and was in a much better position than this court can be to judge, not only of the weight that should be given to the testimony of each of them, but also as to their character and disposition in other respects pertinent to the case. The first consideration of the trial court in a case of this character is or should be the welfare of the children. The statute upon which the action is based is enacted for the benefit and protection of children. The circumstances of the case as developed by the evidence were amply sufficient to convince the trial judge that the father had lost the confidence of his chil-

dren and with it the power to personally control them, for he admits that he despaired of controlling them further after they ran away the second time. This condition of affairs was undoubtedly the result of his harsh treatment of them. We deem it unwise for a father to attempt to control his daughters, of the age of sixteen years, with a "strap slitted at the end," to say nothing of the frying-pan and other instruments mentioned in the evidence, and when such an attempt results in a double failure and the father thereafter seeks, against their will, to remove his daughters from the care of a woman who seems able to control them, without any showing that he has any other place for them, the trial court is fully warranted in the conclusion that such acts are an abuse of parental authority. The case made by the evidence is one which addresses itself peculiarly to the sound judgment and wise discretion of the trial court.

The findings of fact set out herein were not mere conclusions of law as contended, but were amply sufficient on the question of "abuse of parental authority" to support the judgment, and this is the only respect in which the sufficiency of the findings is challenged.

We see no error in the court refusing to allow defendant to prove particular instances of falsehood and deception practiced by plaintiffs prior to January, 1896. The court was fully enlightened as to their traits of character and disposition in that regard by the evidence as to their conduct more immediately preceding their running away from home.

Seeing no reason to disturb the decision as it stands, I advise that the judgment and order denying a new trial be affirmed.

Chipman, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the judgment and order denying a new trial are affirmed.

Harrison, J., Garoutte, J., Van Dyke, J.