[L. A. No. 13518. In Bank.—September 27, 1932.]

MRS. WILLIAM S. CONNESS, Jr., et al., Appellants, v. WILLIAM E. McCARTY, Respondent.

John A. Gilligan and W. A. Alderson for Appellants.

George H. Moore for Respondent.

SEAWELL, J.—Plaintiffs appeal from a judgment for defendant in an action for wrongful death. Plaintiffs are the widow and infant daughter of William S. Conness, Jr., who died of injuries received when he was struck by defendant's automobile while walking on a public road in the county of Los Angeles known as the Culver Boulevard on the morning of November 1, 1928, at about 12:10 A. M. The case is before this court upon transfer from the District Court of Appeal. We granted defendant's petition for transfer to this court after decision by the appellate court reversing the judgment in his favor, for the reason that we were unable to agree with the conclusion that the decedent, as a matter of law, was free from contributory negligence, and therefore the lower court erred in instructing the jury fully on the doctrine of contributory negligence. In our opinion the jury was plainly authorized, upon the evidence before it, to find decedent guilty of contributory negligence.

The facts of the tragic accident are as follows: The decedent, aged twenty-three years, in company with one Bradley and two young women, was returning from the beach towns of Ocean Park and Venice to Los Angeles, via the Culver Boulevard, in a Chrysler roadster with a rumble seat. Bradley was employed by decedent's mother as her chauffeur. At about 7:30 o'clock the two men had observed the young women, with whom they were unacquainted, waiting to board a street-car bound for the

beaches, and had invited them to drive. The night was Hallowe'en, October 31, 1928. After a pleasure tour of the beaches they were returning to Los Angeles about midnight, Bradley driving with one of the young women in the front seat, and decedent and the other young woman occupying the rumble seat. A short distance west of Culver City, Conness requested Bradley to stop the car, as he wished to put on his overcoat. Bradley stopped and parked his automobile on the south side of the road, his right side, headed easterly, with its headlights burning. He testified that the left wheels of his automobile might have been on the improved portion of the road. Both Conness and his young woman companion climbed out of the rumble seat. Conness said to Bradley that they would run up the road a way "to warm up". They started running up the road, hand in hand, in the same direction in which the Chrysler roadster was facing, on their right or the south side of the road. When they had gone a distance of between fifty and seventy-five feet from their automobile they turned to walk back in a westerly direction. After turning back they were struck from the rear by defendant, who was traveling westerly at a speed estimated by him to be thirty-five miles an hour, on the north or his right side of the road. Defendant's brother-in-law was in the front seat with him. Defendant testified that he did not see Conness and the young woman until just as he hit them. He immediately brought his automobile, which was a Lincoln sedan, to a stop within a short distance. After the impact Conness and his companion were lying unconscious, at an angle across the road, at the extreme north edge, or with their heads and shoulders beyond the edge of the gravel-macadam pavement. The right headlight of the defendant's car was bent back against the radiator and the right front fender was dented. The skid marks upon the road showed that defendant had swerved somewhat to his left as he put on his brakes to avoid hitting the couple. Conness died shortly after reaching the hospital and the young woman received serious injuries.

The improved portion of Culver Boulevard at the place where the accident occurred was between twenty to twenty-two feet in width and of gravel-macadam. The district is sparsely settled. There are no sidewalks. The tracks

of the Pacific Electric Railway parallel the road immediately to the north. Defendant had passed a west-bound electric train as it stopped to discharge passengers at the Centinella Avenue station, a short distance east of the scene of the accident, and said train was moving close behind him as he approached the point of collision. He ascribed his failure to observe Conness and the young woman to the fact that the glare from the train headlight, his own headlights, and the headlights of the Chrysler roadster on the other side of the road combined to produce a shadow or blind spot. Defendant had traveled the road daily for a long period prior to the accident. The night was dark and there were no road lights. According to the testimony of two deputy sheriffs of Los Angeles County who inspected the defendant's car when he reported to the Culver City police station immediately after the accident, the windshield of his car was very dusty. This he denied. He testified that he had observed the headlights of the Chrysler. However, we are not primarily concerned on this appeal with the question of defendant's negligence. For the purpose of this appeal and by way of argument, it may be conceded that defendant was negligent, yet if Conness was also guilty of negligence which proximately caused his death, his wife and child cannot recover.

The accident occurred before the enactment of section 150½ of the Motor Vehicle Act (Stats. 1929, p. 546), which provides: "It shall be unlawful for any pedestrian to walk along and upon any highway outside of a business or residence district otherwise than close to his left-hand edge of the highway."

The road on which the accident herein took place is straight for some distance, and it would appear that there were no other cars on it in the immediate vicinity until another Lincoln automobile arrived a few minutes later, in which Conness was taken to the hospital. The testimony given by Bradley, the driver of the Chrysler roadster in which decedent was a passenger, by the young woman in the front seat with him, and by decedent's companion on the highway, was to the effect that as the couple ran and walked away from the Chrysler in an easterly direction they were on the south or their right side of the road. At the time they were hit, after having reversed their

direction, they were on the other side of the road, close to the north edge, as indicated by the position in which they were found after the collision, and alleged in the complaint. Bradley and the young lady in the front seat with him testified that they did not keep their eyes on their companions every minute as they walked down the road. They did not know that the pair on the road had been hit until defendant's brother-in-law came hurrying to their car to make inquiries. Bradley testified that he had a faint recollection of seeing the headlights of the defendant's automobile.

As Conness and the young woman ran down the road they were facing in an easterly direction, from which defendant's automobile was approaching along the straight road with its headlights burning, yet said young woman testified that she did not remember seeing the electric railway car approaching, and that she did not see defendant's car. The jury was warranted in concluding from decedent's conduct that he also failed to observe it. The young woman testified that he ''swung her around, holding hands'', to go back to the Chrysler roadster, and that was the last thing she remembered. There is no testimony to indicate that the two had gone easterly a greater distance than seventy-five feet from the Chrysler roadster. Bradley and the young woman in the front seat with him estimated the distance as between fifty and seventy-five feet, while the injured girl gave the distance as seventy feet. Upon the coroner's inquest Bradley testified that the impact occurred about fifty or sixty feet from the place where the Chrysler was parked. Defendant testified that after he applied his brakes and stopped, he let the brakes up and moved over to the side of the road to get out of the line of traffic, and then, after having moved forward between twenty and twenty-five feet, he was not west of the parked Chrysler, although he might have been opposite it. References made by Bradley in his testimony to the Lincoln ''flashing past'' him, serve only to create a conflict in the evidence. Upon the evidence before it, the jury was plainly authorized to find that decedent and his companion, without observing defendant's oncoming automobile, moved from their position on the south side of the narrow road, out of the path of said west-bound automobile, on to the north

side just as it was close upon them. ██ The exercise of the most ordinary prudence required that they wait momentarily to permit said oncoming automobile to pass, rather than step directly into its line. The equal right of pedestrians with motor vehicles to the use of public streets and roads does not relieve pedestrians from their duty to exercise reasonable care for their own safety.

*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709], and other cases of like tenor are distinguishable from the instant case on the facts.

It follows that the state of the evidence required the court to give instructions on contributory negligence of the decedent. ██ It may be that certain of the instructions given are technically subject to criticism, but considering the charge as a whole, we are of the view that it does not embody reversible error. It may be that the proof is susceptible of inferences contrary to those drawn by the jury. But our inquiry is limited to determine whether the judgment, based on the jury verdict, finds support in the evidence. That it does is clear without further discussion or citation of authority.

The judgment is affirmed.

Langdon, J., Waste, C. J., Tyler, J., *pro tem.*, Curtis, J., Shenk, J., and Preston, J., concurred.