[Civ. No. S. C. 11. Second Appellate District, Division One.—April 22, 1937.]

IRVING BOENS, a Minor, etc., Respondent, v. HARRY BENNETT, Appellant.

Harry G. Sadicoff for Appellant.

Louis B. Stanton and Sherman Grancell for Respondent.

WHITE, J., *pro tem.*—This is an action by a minor son of the age of 19½ years to compel his father to support him during his minority and to pay him sufficient money so that the son might attend college. The action was filed January 22, 1935, and the son attained his majority June 11, 1936. After a trial before the court, sitting without a jury, judgment was awarded the son against his father, directing the latter to pay the sum of $150 per month during the minority of the son. The judgment further directed that the payments of $150 per month be made to a guardian *ad litem* appointed by the court and designated in the judgment, until such time as a general guardian was appointed. The judgment further ordered the father to pay the sum of $450 as counsel fees, and decreed that the son be freed from the dominion and control of his father.

Appellant's first ground of attack upon the judgment is based on the contention that because in 1931 the father obtained a final decree of divorce in the courts of this state and county, which decree awarded the custody of the minor children, including the plaintiff son herein, to the father, and the decree remaining unmodified, that the son, if he has any remedy against his father for support and education, must assert and establish his claim in the divorce case and not by a separate action. The record indicates that in 1918 or 1919 the defendant and his wife, parents of the minor plaintiff herein, separated, the wife and children, including the plaintiff, remaining in New York. In October, 1929, the defendant father filed an action for divorce in the courts of this state at Los Angeles. The entire file in the divorce action was introduced into evidence in the instant case. It showed that service of summons upon the wife residing in New York was made by publication. The evidence shows that the minor plaintiff herein was a resident of New York, where he was born and where he was residing at all times mentioned in the divorce action, and where he continued to reside until June, 1933, when, on the invitation of his father,

the son came to California. The trial court held that jurisdiction in the divorce action rested upon substituted service, accomplished by mailing and publication, as a result of which the court found that the California court in the divorce action was without jurisdiction to deal with the custody of the minor children. In this we think the trial court was correct. Where, as in the divorce case here involved, the defendant wife, residing without the territorial jurisdiction of the California courts, served by publication, did not appear, it cannot properly be said that there was a defendant in court. In this proceeding, the court had before it only the status of the plaintiff husband. The summons, when served by publication upon the wife, a nonresident, was not really a writ to bring the defendant wife into court, but merely a notice prescribed by statute in the interests of fairness, and to rebut the idea that the proceeding was secret. (2 Bishop on Marriage and Divorce, sec. 159.) It brought the *res* into court and not the defendant. The adjudication must be confined to that status. As Judge Cooley, in his Constitutional Limitations (7th ed., p. 584), says: "The publication which is permitted by the statute is sufficient to justify a decree in these cases changing the status of the complaining party, and thereby terminating the marriage; and it might be sufficient also to empower the court to pass upon the question of the custody and control of the children of the marriage, *if they were then within its jurisdiction. But a decree on this subject would only be absolutely binding on the parties while the children remained within the jurisdiction;* if they acquire a domicile in another state or country, the judicial tribunals of that state or country would have authority to determine the question of their guardianship there." (Italics added.)

If the children are within the jurisdiction, and the defendant is personally served with summons, and perhaps if he is not, the court may award the custody of the children to one of the parents. (*De La Montanya* v. *De La Montanya,* 112 Cal. 101, 116 [44 Pac. 345, 53 Am. St. Rep. 165, 32 L. R. A. 82].) Where the children are domiciled, as was the case in the divorce action under consideration here, outside the jurisdiction of the California courts, the remedy of the plaintiff husband must, generally speaking in such cases, be confined to a dissolution of the marriage, with the incident benefits springing therefrom, but he cannot legally obtain

an order for the custody of the children domiciled without the state. (*De La Montanya* v. *De La Montanya, supra,* p. 117. See, also, Freeman on Judgments, secs. 584, 585; Brown on Jurisdiction, secs. 6, 8, 78, 79.) ▮ The trial court was therefore correct in its finding that under the default judgment of divorce obtained by the defendant in an action in which the custody of the children was not mentioned in the complaint, and where the children resided outside the state of California, the California court never acquired or possessed jurisdiction to make or enter any order concerning the custody of the minor children.

There was, therefore, no stricture upon the right of the minor plaintiff herein to bring an action as he did against his father under the provisions of section 203 of the Civil Code, which provides as follows: "The abuse of parental authority is the subject of judicial cognizance in a civil action brought by the child, or by its relative within the third degree, or by the supervisors of the county where the child resides; and when the abuse is established, the child may be freed from the dominion of the parent, and the duty of support and education enforced."

The complaint in this action not only prays for support and maintenance for the minor plaintiff, but demands that the father be required to provide sufficient money with which to furnish the minor plaintiff with a college education, as well as sufficient money with which the plaintiff could "procure an adequate supply of clothing and other furnishings, as well as adequate transportation facilities to and from college and in and about college and for the payment of college expenses, tuition, and books"; and the court found that the defendant father's refusal to furnish the son with funds to attend college was "on account of selfish reasons pertaining to defendant alone and without any regard whatsoever for the welfare of said Irving Boens"; while the judgment predicated in part thereon required of the defendant father that he pay to the minor son $150 per month, not only for support and maintenance, but to finance his son in a college career.

Our attention is not directed to any law or decision in this state requiring a father to send his boy to college. In this connection, research upon our part has been rewarded only with the provisions of the School Code of the state of

California, where sections 1.130 et seq. impose upon parents, guardians or other persons having control of any child between the ages of 8 and 16 years the duty to send such child to a full-time school, subject to certain exceptions in said sections stated; and the minor son herein was more than 19 years of age. The alien philosophy that the child is the creature of the state finds no countenance in the American system of government; and when a child has reached the age of 16 years the courts are not authorized to substitute their judgment for that of the parent as to whether the best interests of the child are served by sending him to college, teaching him a trade, or preparing him for a business career in a practical way. ▌ It is not only the privilege but the duty of the parents to supervise the intellectual as well as the moral development of their children. The father is under no legal duty, after his son has attained the age of 16 years, to send the latter to college, no matter what the father's financial circumstances may be. True, many a father does it, at a sacrifice to himself and the other members of his family, but he does so voluntarily. No doubt the trial court had such instances in mind, but, after all, if a father sees fit to content himself with a common school and high school education for his son, the law ordinarily will require no more of him. A father, unless his parental authority has been taken away by the courts, is the one to decide the extent of the education of his child beyond what is provided by the school system of the state. (*Streitwolf* v. *Streitwolf,* 58 N. J. Eq. 570 [43 Atl. 904, 45 L. R. A. 842].) And if the child, as in the instant case, is past the age of 16 years, the father cannot be compelled by law to give the latter a college education. If the father were dead and the minor son had property, his education could be paid for out of his income, under the direction of the probate court, on a basis of what was proper and customary for one in his station in life; but that is not this case. The son's ambition in the direction of a liberal college education is in itself commendable, but upon the facts now before us, the father cannot be forced to gratify that ambition without making an unwise exception to a good rule.

▌ We come now to a consideration of the findings of the trial court that the minor son was not in possession of sufficient money from his own earnings with which to support and maintain himself with the common necessities of life, and

that during the six months preceding the commencement of this action the minor plaintiff had been dependent in part upon his sister for the necessities of life; and also, the conclusion of law based on the foregoing, that defendant had abused his parental authority and that plaintiff, minor son of defendant, is entitled to have enforced against the latter the duty to provide his minor son with support. It would unduly prolong this opinion to here set forth the evidence in detail. Suffice it to say, there was a sharp conflict in the evidence on these issues. If, however, the trial court believed, as evidently it did, the testimony of the minor plaintiff's sister and other witnesses in his behalf, it was within its rights in rejecting the adverse testimony of the father and witnesses corroborating him. Belief by the trial court of the testimony adduced in behalf of the minor plaintiff entitled the court to make the aforesaid findings and conclusions, because each of them finds substantial support in the evidence. What we have just said applies with equal force to appellant's claim that by reason of the retention by the minor plaintiff of his earnings he was emancipated from his father and that the latter, therefore, was not liable for the minor son's support and maintenance. Upon the triers of fact rests the responsibility to reconcile, if possible, any apparent conflict, whether the same arises from the entire case or in the testimony of a single witness, and to effectuate all the evidence, when the nature of the case will admit of such a disposition; or, if the conflict is irreconcilable, to place their own value on the contradictory evidence. (*Darling* v. *Pacific Elec. Ry. Co.*, 197 Cal. 702, 708 [242 Pac. 703].)

Conceding that conflicting inferences may be drawn by reasonable minds from the state of facts in this case concerning the issues just stated, the court having adopted the one and rejected the other, its decision is binding upon the appellate court, the case being in substance the same as where the court decides upon the weight of contradictory evidence. (*Boland* v. *Gosser*, 5 Cal. App. (2d) 700 [43 Pac. (2d) 559] ; *MacDermot* v. *Hayes*, 175 Cal. 95, 104 [170 Pac. 616] ; *Haight* v. *Haight*, 151 Cal. 90 [90 Pac. 197] ; *Paine* v. *San Bernardino etc. Co.*, 143 Cal. 654 [77 Pac. 659].) All intendments are in favor of the findings and judgment arrived at upon conflicting testimony. Where the facts are such that contradictory inferences can reasonably be drawn from them, an ap-

pellate court will not substitute other· inferences for those adopted by the trial court. (*Hughes* v. *Quackenbush,* 1 Cal. App. (2d) 349, 354 [37 Pac. (2d) 99] ; *Ketelhut* v. *Gunther,* 100 Cal. App. 409 [279 Pac. 1083] ; *Coats* v. *Hathorn,* 121 Cal. App. 257 [8 Pac. (2d) 1038].) This is the rule even where the reviewing court might have reached a different conclusion. (*Conness* v. *McCarty,* 216 Cal. 415 [14 Pac. (2d) 507] ; *Foxe* v. *Southern Pac. Co.,* 121 Cal. App. 633 [9 Pac. (2d) 514] ; *McGlothin* v. *Larussa,* 122 Cal. App. 324 [10 Pac. (2d) .116].) Of course, testimony which is inherently improbable may be disregarded (*Neilson* v. *Houle,* 200 Cal. 726 [254 Pac. 891]), but to warrant such action there must exist either a physical impossibility of the evidence being true, or its falsity must be apparent, without any resort to inferences or deductions. (*Powell* v. *Powell,* 40 Cal. App. 155 [180 Pac. 346] ; *Stahmer* v. *Stahmer,* 125 Cal. App. 132 [13 Pac. (2d) 833].)

The obligation, both moral and legal, rested upon this defendant father, who brought his minor son from New York to California, to give the latter support suitable to the former's circumstances, and if the court believed, as it had a right to believe, from the evidence, that the father repudiated this obligation and by his conduct cast his son and the responsibility for the latter's maintenance upon others, then it was proper for the court to make an award to a guardian of such sum as was necessary to support the minor child according to the circumstances of the father.

Appellant's final claim is that the trial court was without power to award attorney's fees to counsel for the minor plaintiff. This contention of appellant is without merit. Section 203 and kindred sections of the Civil Code are part of the substantive law of the state, establishing and declaring a legal duty of the parent to maintain and support his children who are within such provisions, and establishing the right in such children to have such maintenance and support and to enforce against the parent such obligation and duty upon the latter's part. As the duty runs to the children, the latter are the persons to whom the right imposed by the duty accrues; and they are the proper parties to an action to enforce such right and compel the performance of such duty. The court having, as we have seen, jurisdiction to enforce the provisions of section 203 of the Civil Code, it had the

power to make all orders necessary for that purpose, including the order for counsel fees. There was sufficient evidence to sustain the finding of appellant's financial ability to comply with such order, and there was no abuse of discretion in the amount awarded.

Appellant also filed herein an application for leave to take additional evidence of facts occurring subsequent to the entry of judgment. An examination of the record indicates that this application has reference to an order made in the court below subsequent to the rendition of the judgment now before us on appeal, and that from such order made after final judgment an appeal has been taken by appellant to the Supreme Court, bearing the latter tribunal's number L. A. 15446. The application in question, therefore, should have been addressed to the Supreme Court in the above-numbered case. So far as the case before us is concerned, the application for leave to take additional evidence is therefore denied, without prejudice to its renewal in the Supreme Court in the case referred to in the matters presented by such application.

Other points raised on this appeal do not require discussion.

In view of what we have said herein, it becomes necessary to reverse the judgment appealed from, but a new trial is not necessary. Holding as we do that the trial court was in error under the facts of this case in ordering that the father send his son to college, and due to the further fact that the minor respondent here involved attained his majority on June 11, 1936, since which time the appellant father was not required to maintain and support his son because of the latter's minority alone, the trial court in its findings should therefore render judgment for the total amount of such expenditures as were reasonably and necessarily made by or through the guardian *ad litem* appointed by the court for the maintenance and support of said minor son from the commencement of this action until he attained his majority on June 11, 1936.

Unless the parties stipulate as to the amount of such expenditures, then the trial court should take evidence as to the amount so necessarily expended for such support and maintenance from the date of the commencement of this action up to June 11, 1936, on which latter date the minor respondent became of age.

For the foregoing reasons, the judgment is reversed and the cause remanded, with directions to the court below to enter judgment in accordance with the views herein expressed.

York, Acting P. J., and Doran, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 21, 1937.