[Civ. No. 9252. Third Dist. Dec. 31, 1957.]

JACK ALLEN, Appellant, v. EMILY ALLEN, Respondent.

Robert L. Bostick and Marshall Rutherford for Appellant.

Vargas, Dillon & Bartlett for Respondent.

SCHOTTKY, J.—Plaintiff, Jack Allen, was awarded an interlocutory decree of divorce and the custody of the two minor children of the parties in December, 1954. The parties had entered into an agreement which provided that plaintiff should have the custody of the children, two boys, aged 10 and 6. On September 25, 1956, the court made an order granting defendant wife's motion to modify the interlocutory and final decrees of divorce, said order providing that said decrees "should be modified with respect to the care, custody and control of the minor children of the parties so as to award the custody and control of said minor children to the defendant during the time that the children or either of them is in

school, subject to the right of reasonable visitation on the part of the plaintiff, and provided further that for two months of each summer vacation period the plaintiff shall have the physical custody of said minor children and provided further that the plaintiff shall have the physical custody of the minor children for the Christmas vacation period of December, 1957 and for alternate Christmas vacation periods thereafter.'' Plaintiff has appealed from said order.

Appellant makes a vigorous attack upon the order, contending that the evidence was insufficient to show a change of conditions justifying a change of custody and that the court abused its discretion in ordering such a change. Before discussing these contentions we shall summarize the evidence as shown by the settled statement.

The defendant testified that she only signed the custody agreement after plaintiff told her that he would always let her see the children; that if she was not drinking she could have the custody, and that if she did not sign he would ruin her name. She testified that she signed because she was emotionally upset and her then attorney failed to advise her of her rights. She testified that she is no longer drinking intoxicating liquors and she is now attending church regularly and teaches in Sunday School. She admitted that while married to plaintiff she took a trip to Las Vegas with one Robert Foster and registered in a motel there as his wife and that she lived together with him thereafter in Atascadera, California, for a period of three months. She denied she had thereafter had further sexual relations with Mr. Foster until her marriage to him on January 14, 1956. At the time of the July hearing the defendant was pregnant and a birth certificate (attached to plaintiff's affidavit in support of motion for new trial) shows that a 7-pound, 10½-ounce boy was born to defendant and Robert Foster on August 7, 1956, after a pregnancy of 40 weeks. She stated that they have rented a new five-room house in a fine neighborhood, in one bedroom of which there are twin beds for the children. The house is located close to a school. She stated that plaintiff is living in a three-room lower flat in a poor district in the older section of town where the traffic is heavy. She testified that the conduct of the plaintiff subsequent to the interlocutory decree convinced her that the representations he made to procure her signature to the agreement had been made without any intention of carrying out the promises contained therein.

Robert Foster stated that the defendant is his third wife

and that he has children by a previous marriage whom he is supporting through the Los Angeles Welfare Department and whom he has not seen for a period in excess of four years. He acknowledged having sexual relations with the defendant while she was living with plaintiff and admits living with her as man and wife subsequent to the interlocutory and prior to the final decree. He testified he earns $450 per month, wants her to have the children, is happy to have them with him, and is willing to support them in full.

The parents of the defendant and Mr. Foster testified that defendant is presently a fit and proper person to have the custody of the children.

The plaintiff testified that prior to the divorce defendant got into the habit of drinking intoxicating liquor to excess and started running around with other men and would not return home until very late at night. He testified as to her neglect of the children and her meretricious relationship with Foster. There was testimony of other witnesses to the same effect. Plaintiff also testified that some weeks prior to the interlocutory decree, the defendant agreed that he should have the custody of the children and an agreement was worked out by the attorneys. After plaintiff was awarded custody, the children and his mother lived with him and the children appeared to be happy and contented.

In addition to the testimony there were also reports of the Welfare Department of Santa Barbara County as to the home conditions of the defendant, and of the Welfare Department of Alameda County as to the home conditions of the plaintiff. Plaintiff contends that these reports were submitted without stipulation by plaintiff's attorney; however, defendant points out that in the preamble of the court's findings of fact and conclusions of law the court stated that the parties had stipulated as to these reports.

The court found that the home conditions had changed and that it is now for the best welfare of the two minor children that they be awarded to the custody of their mother with reasonable rights of visitation, two months' custody during the summer and every other Christmas vacation custody to the father. The court found that the recreational facilities, school facilities, traffic hazards and children associations were more favorable where the mother resides than where the father resides. The court further found that conditions with respect to the fitness and ability of the mother have changed materially with respect to her being no longer employed and

thus able to devote her full time to keeping house and with respect to her housing facilities, her nonuse of intoxicants, her church attendance, and the entire home environment. The court directed plaintiff to pay $30 per month for the support of each child.

The general rule governing applications for change of custody of minor children has been well stated in *Newman* v. *Newman,* 109 Cal.App.2d 359, at page 360 [240 P.2d 682], as follows:

"An application for modification of an award of custody of minor children is addressed to the sound discretion of the trial court and its determination will not be disturbed on appeal except upon a clear showing of abuse of that discretion. [Citing cases.]

"It is the general rule that to justify a modification of an order for custody of minor children there must be a change of circumstances after the original decree was entered which renders it essential or expedient for the welfare of the child that there be a change. It is, however, the welfare and best interests of the child with which the court is primarily concerned. (*Foster* v. *Foster,* 8 Cal.2d 719, 728 [68 P.2d 719]; *Washburn* v. *Washburn,* 49 Cal.App.2d 581, 588 [122 P.2d 96]; *Johnson* v. *Johnson,* 72 Cal.App.2d 721, 723 [165 P.2d 552].) Whether a parent is a proper person to have the custody of a minor child is controlled by a determination of his or her fitness at the time of the hearing as it relates to the welfare of the child. (*Prouty* v. *Prouty,* 16 Cal. 2d 190, 194 [105 P.2d 295]; *Sorrels* v. *Sorrels,* 105 Cal.App.2d 465, 469 [234 P.2d 103].) Where custody has been decreed to one parent he or she may not be deprived of the custody for any alleged unfitness unless it be shown he is so unfit as to endanger the child's well-being or unless there is clear and convincing evidence that the child's welfare and best interests will be directly promoted by the change."

Appellant concedes that there has been a change in the home conditions of defendant but states that this change is that defendant "is now married to the gentleman with whom she was admittedly adulterous on repeated occasions during her marriage to plaintiff, which adulterous relationship directly caused the break-up of the parties' home." He argues that it would be "a classic injustice to take the children from plaintiff who has proven his ability to raise them and place them in an environment where the dominant custodial factor

will be the very person whose flagrant intrusion into plaintiff's family caused its destruction.''

As to the court's finding concerning the nonuse of intoxicating beverages and the attendance of church, appellant states that ''. . . there is little to be said except that under the circumstances one who refrains entirely from the use of intoxicating beverages has a suspicious devotion to the cause of temperance, and as to church-going, a belated piety is better than none at all. But it is common knowledge that these things do not make a good parent in and of themselves as the trial court seems to hold and they fail to meet the burden placed upon defendant to show a change justifying a modification of custody.'' Appellant asserts also that the evidence supporting the findings that the defendant's recreational, school, and housing facilities are superior to plaintiff's does not meet the burden of proof placed upon the defendant. The only evidence of ''traffic hazards'' is the statement of defendant that at plaintiff's residence ''traffic is heavy,'' but the probation officer did not mention it, and there is no evidence that the children are menaced by the traffic. Appellant asserts further that concerning the finding on associations there is not any evidence as to the type of children to be encountered in either environment and it cannot be suggested that because plaintiff's neighbors are of Chinese or Japanese extraction they are necessarily of a ''poor'' type of associates.

Respondent in reply contends that there is ample evidence to sustain the court's order. Respondent quotes what this court said in *Exley* v. *Exley*, 101 Cal.App.2d 831, at page 835 [226 P.2d 662]:

''There are some well settled rules that control the matter of awarding custody of a minor child after its parents have been divorced. First, the court has continuing jurisdiction on good cause shown to change from time to time its custodial orders. Again, it is not necessary that an order modifying a custodial decree should contain a finding as to unfitness of a parent from whom the custody is taken. (*Simmons* v. *Simmons*, 22 Cal.App. 448, 456 [134 P. 791]; *Stever* v. *Stever*, 6 Cal.2d 166, 167 [56 P.2d 1229]; *Guardianship of White*, 84 Cal.App.2d 624, 628 [191 P.2d 466].) Also by force of Civil Code, section 138, as interpreted by our courts, there is of necessity confided to trial courts, when determining proper disposition of minor children, a very extensive discretion with a view of conserving the highest and best interest of such minors; and the conclusion arrived at by such courts

in such cases will not be set aside unless the record discloses a clear abuse of that discretion. (*Simmons* v. *Simmons, supra,* at p. 451.)

"As we have stated above, there was evidence of a change of circumstances of the mother of this minor and we hold the showing to have been sufficient to bring the matter within the broad discretion of the trial court above noted, and for that reason its ruling in this respect must be affirmed."

Section 138 of the Civil Code provides that in awarding the custody of children, the trial court is to be guided by the following considerations:

"(2) As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, it should be given to the mother; . . ."

In *Clayton* v. *Clayton,* 117 Cal.App.2d 7, the court affirmed an order modifying a prior award of custody, and said, at page 11 [254 P.2d 669]:

"It is the rule that where a contest is between the opposing parents, both fit, the 'tender years' provision of subdivision 2 of section 138 of the Civil Code must be read with the provisions of subdivision 1 of the section making the welfare of the children a factor which must be considered. The trial court, when faced with two fit parents, must give consideration to the best interests of the children, and in determining that fact has a broad discretion in deciding whether other things are equal. Cases emphasizing the broad discretion existing in the trial court are legion. [Citations.]"

Notwithstanding the earnest argument of appellant, we are convinced that it cannot be held as a matter of law that the court abused its discretion in making the order changing the custody of the minor children. The trial court had the parties before it and concluded that the best interests of the minor children would be served if they were in the custody of their mother. The past conduct of respondent mother, while a factor to be considered by the trial court, did not compel a finding that respondent was not a fit and proper person to have the custody of the children at the time of the hearing. As this court said in *Ashwell* v. *Ashwell,* 135 Cal. App.2d 211, 217 [286 P.2d 983]: "It is proper to bear in mind, as these things are being considered, that in determining where custody of children shall lie the courts are not engaged in a disciplinary action to punish parents for their short-comings as individuals nor to reward the unoffending parent

for any wrong suffered by the sins of the other." And as stated in *Newman* v. *Newman, supra,* at page 360: "Whether a parent is a proper person to have the custody of a minor child is controlled by a determination of his or her fitness at the time of the hearing as it relates to the welfare of the child."

It was for the trial court to weigh the evidence and resolve the conflicts. We conclude that there was substantial evidence to support the determination of the trial court that it was for the best welfare of the two minor children that they be awarded to the custody of their mother.

The order is affirmed.

Van Dyke, P. J., and Peek, J., concurred.