[Civ. No. 7756.   Fourth Dist., Div. Two.   June 20, 1966.]

LORRAINE V. MONTANDON, Plaintiff and Respondent,
v. JEAN M. MONTANDON, Defendant and Appellant.

DeBord & Lopez, T. L. DeBord and Fred A. Lopez, Jr., for
Defendant and Appellant.

Novack & Novack and Julius J. Novack for Plaintiff and
Respondent.

McCABE, P. J.—In 1963, the defendant petitioner filed an
order to show cause to require respondent to have the minor

children of their previously terminated marriage registered in school and known by their paternal surname and not the surname of the present alleged spouse of the respondent. After a hearing this relief was denied.

From the record, including an engrossed statement filed in lieu of a transcript, the following facts appear:

██ The Montandons were divorced in California by an interlocutory decree entered June 1, 1956. This decree granted Mrs. Montandon custody of the two minor, male children with certain visitation rights to Mr. Montandon and ordered him to pay $50 per month for each child's support. Immediately after the interlocutory decree was entered, Mrs. Montandon went to Mexico, obtained a Mexican divorce and there married Robert Brannon. Admittedly, before respondent went to Mexico she was aware the California divorce was not final. Respondent and Mr. Brannon immediately returned to California. From that time to the date of the hearing on the order to show cause they lived together with the Montandon minors.

In August 1956, the petitioner and respondent entered into a formal written agreement whereby in consideration of petitioner relinquishing his right in and to specifically described joint tenancy real property (the family home) respondent waived any right to receive alimony or child support. In that agreement, signed by respondent, it was provided, in part, ". . . I agree to the stipulation that said two children will not be legally adopted by my present spouse or future spouses . . ." The agreement further provided that it "be made a matter of court records in the month of June 1957." Upon application of the petitioner herein, the final decree of divorce was entered in June 1957.

In September 1956, the minor, male children, then approximately 6 and 3 years of age, were enrolled in school under the surname of Brannon, and have continued to be so enrolled.

For several years and in reliance on the stipulation releasing respondent's alimony and support claims, petitioner made no child support payments. After consulting an attorney, and after the attorney advised him the children might be declared abandoned for his failure to support them petitioner made child support payments. From 1962 to the date of the hearing on the order to show cause, petitioner has made regular monthly payments for child support in the amounts set forth in the divorce decree. There is a conflict in the testimony as to whether petitioner knew his sons were using the name

Brannon, but it is a reasonable inference to be drawn from the evidence that sometime between 1956 and 1962, he learned that fact and made no formal protest. For several years prior to 1963, petitioner had had his sons with him on some weekends and on his vacations and had attended ceremonies when an award was given to at least one of his children, given to the minor under the name Brannon.

Respondent testified she had an apprehension that if the children were not to use the name Brannon it would lead to embarrassment, confusion and detriment to the children. This testimony was an apprehensive conclusion for there is no testimony to support it.

Respondent and Mr. Brannon only have the marital status which may have been created by respondent's Mexican divorce and the Mexican marriage. Their marital status is not an issue on this appeal.

Petitioner argues to us that the rights of a father to have his natural children bear his surname is an inviolate right under the authority of *In re Larson,* 81 Cal.App.2d 258, 262 [183 P.2d 688] ; *In re Malloy,* 185 Cal.App.2d 135 [8 Cal.Rptr. 143]. Further, even though the mother legally remarries she may not change the surname over the natural father's objection merely because of embarrassment and inconvenience. *DeVorkin* v. *Foster,* 66 N.Y.S.2d 54; *In re Cohn,* 181 Misc. 1021 [50 N.Y.S.2d 278] ; *In re Ebenstein,* 85 N.Y.S.2d 261, and 53 A.L.R.2d 915 are cited to us.

Respondent argues in several areas (1) emotional disturbance and embarrassment to the children; (2) since custody of the children was granted to her, she has certain rights regarding schools, religion and punishment, citing *Boens* v. *Bennett* 20 Cal.App.2d 477 [67 P.2d 715] ; *Hardwick* v. *Board of School Trustees,* 54 Cal.App. 696 [205 P. 49] ; *Hutchinson* v. *Hutchinson,* 124 Cal. 677 [57 P. 674] ; and 2 Armstrong, California Family Law, p. 1266; (3) there must be a change of circumstances to modify the custody order *Prouty* v. *Prouty,* 16 Cal.2d 190 [105 P.2d 295] ; *Crater* v. *Crater,* 135 Cal. 633 [67 P. 1049] ; *Foster* v. *Foster,* 8 Cal.2d 719 [68 P.2d 719] ; *Allen* v. *Allen,* 156 Cal.App.2d 499 [319 P.2d 673] ; *Bartold* v. *Bartold,* 155 Cal.App.2d 251 [318 P.2d 69] ; *Disney* v. *Disney,* 121 Cal.App.2d 602 [263 P.2d 865] ; *Sampsell* v. *Superior Court,* 32 Cal.2d 763 [197 P.2d 739] ; (4) an individual who has no fraudulent purpose may change his name merely by adopting another and different name. (*Emery* v. *Kipp,* 154 Cal. 83 [97 P. 17, 129 Am.St.Rep. 141, 16 Ann.Cas. 792, 19

L.R.A. N.S. 983]; *Ray* v. *American Photo Player Co.*, 46 Cal.App. 311 [189 P. 130].)

While an individual's common law right to change his name has not been superseded by statutory provision, *In re Weingand,* 231 Cal.App.2d 289 [41 Cal.Rptr. 778]; *In re McGehee,* 147 Cal.App.2d 25 [304 P.2d 167]; *Turesky* v. *Superior Court,* 97 Cal.App.2d 838 [218 P.2d 784]; *In re Useldinger,* 35 Cal.App.2d 723 [96 P.2d 958], the case before us is not one in which an individual of his own volition, voluntarily and without fraud, uses a different name. Here, the respondent, having the minor children in her custody, gave the new name to the minor children. They were not of an age when such a choice could be voluntarily made.

It seems fittingly fair to allow the one who has the custody under a legal order of court to select the religious, cultural, and educational forum and to allow the custodian to have the disciplinary procedures. All of these facets unite to reach a desired result without unnecessary traumatic experiences for the child. In a study of the cases cited to us to sustain the above facets, there is no indication that to procure the desired result or to avoid a traumatic experience to the child, it is necessary that his surname be at the sole choice and selection of the custodian. Under the postulation of respondent a custodian under legal order of court who is unrelated by blood or marriage to the child would have the right to change the surname at the whim of the custodian even though the custody order was temporary and at all times subject to change by court order if circumstances warrant. Thus, possibilities of traumatic experiences to ward so abhorred by respondent would be multiplied, not lessened.

Focusing our attention to the children, it is obvious that the children knew they had a natural father for they had been with him over the years and on frequent occasions. There is no testimony they believed he was any other person than their father. The only reasonable inference is the children knew Mr. Montandon was their father, their parents were divorced and they were living with their stepfather. There is no evidence that this caused the children, or either of them, confusion or embarrassment or emotional disturbance. The defendant-petitioner has manifested an abiding interest in maintaining his paternal relationship with his sons. At no time has he been declared in default of his obligation to make support payments in their behalf.

The precise point in issue has not been previously decided

by an appellate court of this state. However, several cases have dealt with analogous situations under statutory provision relating to a change of a minor's name. We are not here presented with a request for change of name under statutory sanction as in *In re Larson, supra*, 81 Cal.App.2d 258; *In re Malloy, supra*, 185 Cal.App.2d 135. These cited cases, while holding the patrilineal interest was sufficient to make the divorced father a "necessary" party to the hearing for change of name, are not determinative of the issue herein presented.

The use of surnames in modern times was initiated in English law by the Normans after the conquest.[1] The surname, since it is not conferred by ceremony, is acquired only by reputation and not by inheritance. (*Leigh* v. *Leigh* [1808] 15 Ves. 92, 110, 33 Eng.Rep. 690, 35 Digest 710, *86*.) The question of the surname of a minor child after divorce was first considered by Lord Coke in *Sir Moyle Finch's Case* (1606) 6 Rep. 66a, 77 Eng.Rep. 348, 354, 35 Digest 702, ii: "If a man marries with a woman precontracted and has issue by her, this issue in law and truth bears the surname of his father. But if after the husband and wife be divorced for the precontract, now the issue has lost his surname; for, as it has been said, *cognomen majorum est ex sanquine tractum*, and now the issue is bastard *et nullis filius*; and yet because he once had a lawful surname, it is a good ground of reputation subsequent."

The custom of using the patrilineal surname was conditioned upon the continued support of the child by the father by the Eighteenth Century English courts.[2]

In the consideration of this precise question presented to us and following the principles enunciated by the English courts, the courts of New York have refused to permit the change of the minor's paternal surname absent a statutory involvement. In *Pottish* v. *Pottish*, 88 N.Y.S.2d 394, the court held: "While it might be convenient and less embarrassing for the children to acquire the name of the plaintiff's present husband, the decision as to changing their name to one other than that to which they were born should properly await the children's own determination at an age when they are fully competent to act for themselves." See also *Galanter* v. *Galan-*

---

[1] Camden's Remains, (1674 ed.) pp. 135-36.

[2] Works, ii, 490, (1722): "And tho' it be ordinary to make the eldest son only to bear the name, yet it seems very reasonable that even all the younger children should bear the name if they get any Patrimony out of the family, unless they can prove they were provided *aliunde*."

*ter*, 133 N.Y.S.2d 266, 268, wherein it is stated: "The father despite his differences with his former wife which resulted in some form of dissolution of the marriage, cannot be arbitrarily deprived of his right to have his children use his name unless it appears that it is in the interests of the children that such change be made. The mere fact that it would be convenient for his former wife to use the name of her present husband is not any legal basis for permitting that to be done."

In the case of *Kay* v. *Kay*, 65 Ohio L.Abs. 472, 51 Ohio Ops. 434 [112 N.E.2d 562, 566], the Ohio tribunal in a well-reasoned opinion and under a nonstatutory proceeding held: "The child's father, while far removed from physical contact with his son because of his employment, is supporting the child regularly. There is no testimony that he is not interested in the child or that he does not have paternal affection for him. He has professed a strong desire to have the child bear his name, and without undue delay after the child had been registered in school under a different name he raised objection in this court.

"From time immemorial it has been the custom for male children to bear the family name of their father throughout life. The paternity of a child cannot be changed. Under the circumstances here presented the Court cannot say that the name of the child should be changed. If, when the boy fully appreciates the circumstances and is capable of selecting a name for himself, he chooses to bear the surname of someone other than his father, he may do so. The Court is convinced that in the meantime it would not contribute to the boy's welfare to permit interference with the usual custom of succession to the paternal surname, or to foster any unnatural barrier between the father and son."

The respondent's remaining contention is not well taken that the change of familial circumstances of the minor children is justification for the change of their surname. The respondent agreed in the August 1965 stipulation, for consideration, that the said two children would not be legally adopted by her present spouse or future spouse. If she is attempting to rescind that agreement, she has not tendered the consideration she received for its execution, if indeed she were able to rescind the agreement. If she is seeking modification of the custody award, she has not petitioned for the relief she now asserts. (*Prouty* v. *Prouty, supra,* 16 Cal.2d 190, 193; *Stack* v. *Stack,* 189 Cal.App.2d 357, 369 [11 Cal.Rptr. 177].)

The elasticity of a rule of law allowing a mere custodian whether of minors, adults, or incompetents to interrupt, arbitrarily, the inheritance of a surname is not commensurate with genealogy, history, justice and fairness in the United States.

Judgment is reversed and the trial court is directed to enter an order consistent with this opinion which order will provide that the minor children, Jean M. Montandon, Jr. and Michael J. Montandon, shall retain their father's surname and be enrolled, registered and known respectively as Jean M. Montandon, Jr. and Michael J. Montandon.

Kerrigan, J., and Tamura, J., concurred.