STONE, J.
 

 Appellant owners were awarded $12,225.25 for 28.93 acres of land covered by dredger tailings. The prop
 
 *595
 
 erty was condemned for the avowed purpose of first removing the dredger tailings for use in the embankment of the Oroville Dam, and eventually for fish and wildlife preservation and recreation purposes.
 

 The first ground of appeal relates to instructions concerning fair market value and rulings on evidence concerning this issue. Except for use in the project, the value of the rocks and gravel in the dredger tailings which covered the entire area was minimal, but when valued as material to be used in the project, they acquired a substantial value. The court, following the established rule of this state, refused to permit the trier of fact to consider the impact of the proposed project in determining the fair market value of the property being condemned.
 

 A number of cases from other jurisdictions are cited in support of appellants’ contention that the trial court was wrong in its ruling, but we shall not discuss them as the California cases, which we as well as the trial court must follow, hold that property values arising from the improvement proposed by the condemnor can not be considered in determining fair market value. The rule, which has been stated in many cases in varying ways, is exemplified in
 
 People
 
 v.
 
 La Macchia,
 
 41 Cal.2d 738, 754 [264 P.2d 15], wherein the Supreme Court said: “Compensation is based on loss imposed on the owner, rather than on benefit received by the taker. [Citations.] The beneficial purpose to be derived by the condemnor’s use of the property is not to be taken into consideration in determining market values, for it is wholly irrelevant. ’ ’
 

 In an earlier ease,
 
 Spring Valley Water Works
 
 v.
 
 Drinkhouse,
 
 92 Cal. 528 [28 P.2d 681], property was being condemned for reservoir purposes. The opinion holds that the market value of property “is not to be determined by the fact that the party seeking to condemn it has already determined to build a reservoir. To allow that element to enter into the computation would be to make the plaintiff’s necessity the owner’s opportunity.” (P. 537.)
 

 A subsidiary question which, upon pursuit, turns out to be purely verbal, is raised by appellants in assigning as error the striking of the testimony of one of their witnesses relating to fair market value. The record reflects that the stricken testimony, that of an engineer, Mr. Handforth, was based upon the use of the dredgings in the project. The wit
 
 *596
 
 ness candidly conceded on cross-examination that his testimony concerning fair market value “reflects the impact of this particular project.”
 

 Mr. Handforth testified that had not the state undertaken the Oroville Dam project it is likely that a public agency, probably the state, would undertake a similar project in the future. He testified that this likelihood enhanced the fair market value, and he fixed a value based on this possibility. The court struck this evidence also, and appellants cite the ruling as error.
 

 Respondent points out that the testimony was highly speculative ; a more compelling reason for striking it is that the testimony was based upon the assumption the State of California would eventually build the dam or perhaps with the federal government undertake a similar joint project. Mr. Handforth testified that at one time the federal government considered building a dam at Oroville but abandoned the plan and decided to build two small dams elsewhere. Further, he testified that except for the abandoned interest of the federal government, no entity other than the State of California had ever made an investigation of any kind in contemplation of a similar project being constructed at the Oroville site, and that no one other than the state had filed an application for water rights, drafted plans for a dam, or was presently seeking to build a dam.
 

 Appellants urge as concomitant error the refusal to give their proffered instructions based upon the stricken evidence. These instructions are epitomized by the following excerpt: “You may consider the present value of the lands here condemned for prospective purposes. You may not consider a remote or speculative purpose. If you find that it is a reasonable probability that an earth fill dam would be constructed by someone, including the State, in the general vicinity of the site of the dam now under construction, in the reasonably foreseeable future, had the State not done so at the precise time it did, you may consider the effect of such prospective use of the condemned lands in fixing value. ’ ’
 

 Neither the evidence nor the proffered instructions conform to the rules for establishing the fair market value of the land for reservoir purposes. Rather, appellants, by posing a supposititious delay in commencing the project, sought to get the impact of the current project on market value in evidence through the back door.
 

 
 *597
 
 Appellants seize upon eases such as
 
 City of Stockton
 
 v.
 
 Ellingwood,
 
 96 Cal.App. 708 [275 P. 228], as authority for the admissibility of their engineer’s testimony that had not this condemnation action been commenced the dredger tailings might be used at some later time in the construction of a similar dam. But that case, insofar as here pertinent, discusses possible uses of property in the framework of the highest and best use at the time of taking; there the facts were that the property was peculiarly adaptable for reservoir purposes. The rationale of the opinion affecting the issue before us is contained in the following excerpt, page 715: “If the lands sought to be condemned are peculiarly valuable for reservoir purposes, we think the following is a correct statement of the law as applied to the pending actions: What the land is worth in the market for reservoir purposes, not what it is worth to the condemnor for reservoir purposes, is the major factor to be considered by the court in making its award of damages. . . . ‘The fact that the party seeking to condemn is not proposing to make the highest use of the condemned property is not a matter to be taken into consideration in determining values, any more than the value of the use of the property to the condemnor is likewise not to be considered. Both of such elements are inadmissible. ’ ’ ’
 

 Proof that property being condemned is adaptable for use as a site for a dam or a reservoir by entities or persons other than the condemnor is quite different from proving that the same agency would have condemned the property at a later date had it not commenced the present action. Appellants’ property is located several miles below the dam and it was not shown that there was any likelihood that it would be or could be used for any purpose other than in connection with a project similar to that contemplated by respondent. To permit the jury to consider the condemnor’s use of the property or its need for the property in a supposititious condemnation for a similar project
 
 in futuro
 
 would simply circumvent the settled rules for determining market value.
 

 Appellants assert that some of their neighbors sold dredger tailings for use in the project for 15 cents per cubic yard, while appellants, deprived of the benefit of the project, received about .0088 cents per cubic yard. Thus, they assert, they have been denied equal protection of the law. Strong as the emotional impact of the argument is, equal protection of
 
 *598
 
 the law cannot be equated with equal economic result from application of the law.
 

 It is true that courts do not look upon such disparate results with a friendly eye, nevertheless so long as a rule of law is impartially applied to all those within the class touched by its enforcement, all are deemed to be treated equally and the constitutional requirement of equal protection of the law is met. For example, in zoning a line must be drawn somewhere; a property owner on one side of the line is restricted in the use of his property, to his economic disadvantage, while his neighbor on the other side of the line is not restricted in the use of his property. Palpably, the economic impact of the zoning ordinance does not affect the two property owners equally, but this economic result does not render the zoning ordinance unconstitutional. Closer aboard are situations where a freeway right-of-way passes through agricultural land worth two thousand dollars an acre at fair market value, for which the condemnee is compensated accordingly. The adjoining land frequently becomes commercial property by reason of the project and rises in value perhaps to $50,000 an acre. Under appellants’ theory of equal protection, the condemnee should be reimbursed, not on the basis of the fair market value of his land at the time of the taking, $2,000, but on the basis of the impact of the project on his neighbor’s land, $50,000.
 

 There remains appellants’ contention that "attorney fees and reasonable expenses incurred by a property owner in a condemnation case in the preparation of the defense of his case should be included as a part of just compensation. ” It is argued that article I, section 14, of the California Constitution, which provides that private property shall not be taken or damaged for public use without just compensation, is self-executing and the cases holding that attorneys fees and expenses are allowable only when authorized by statute, are in error.
 

 Although appellants make a persuasive case for allowing attorneys fees and expenses as "just compensation,” the courts consistently have held they are not recoverable in a condemnation action except where provided for by statute, such as upon abandonment by the condemnor.
 
 (Coburn
 
 v.
 
 Townsend,
 
 103 Cal. 233, 236 [37 P. 202];
 
 City of Los Angeles
 
 v.
 
 Abbott,
 
 217 Cal. 184, 194 [17 P.2d 993] ;
 
 La Mesa-Spring Valley School Dist.
 
 v.
 
 Otsuka,
 
 57 Cal.2d 309, 313 [19 Cal
 
 *599
 
 .Rptr. 479, 369 P.2d 7].) We are not privileged to disregard these cases.
 
 (Auto Equity Sales, Inc.
 
 v.
 
 Superior Court,
 
 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Consequently we conclude appellants are not entitled to recover attorneys fees.
 

 The judgment is affirmed.
 

 Conley, P. J., and Gargano, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied December 27, 1967.