14 Cal.App.3d 513 (1971)
92 Cal. Rptr. 401
THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant,
v.
FREDERICK N. CRAMER et al., Defendants and Respondents.
Docket No. 12472.
Court of Appeals of California, Third District.
January 19, 1971.
*514 COUNSEL
Harry S. Fenton, John B. Matheny, Edward J. Connor, Jr., Stephen A. Mason and Ronald I. Harrison for Plaintiff and Appellant.
Lally, Martin, Chidlaw & Brown, Lally, Martin & Chidlaw, William T. Chidlaw and Bradford, Cross, Dahl & Hefner for Defendants and Respondents.
*515 OPINION
REGAN, J.
On May 3, 1967, plaintiff filed a complaint in eminent domain seeking to condemn for freeway purposes certain properties owned by defendants. The pretrial conference order filed on December 22, 1967, provided that certain issues of law were to be tried by the court sitting without a jury. Following trial, the court on August 6, 1968, made the following order:
"1. Interstate 880 and interstate 80 are two separate projects.
"2. The defendants herein are entitled to any enhancement in value of their property which results from it's [sic] proximity to interstate 880."[1]
Thereafter, a stipulation was entered into by the parties. Pursuant to this stipulation the parties agreed, giving effect to the foregoing court order, that the fair market value of the property being condemned was $95,000. The stipulation also provided that if the case had been tried before a jury, plaintiff would have made an offer of proof that, but for the court order, the fair market value of the property would be $25,928. The stipulation preserved the right of appeal to the parties.
Judgment in condemnation was entered pursuant to stipulation. The plaintiff appeals.

FACTS
A resolution adopting Route Interstate 880[2] was passed by the California Highway Commission on March 22, 1961. This freeway runs generally from a location in Yolo County near Harbor Boulevard to a point easterly of Watt Avenue in Sacramento County. Interstate I-880 was essentially designated so that Lake Tahoe-San Francisco traffic could circumvent Sacramento city traffic. Prior to this date, interstate status had been achieved on July 30 and August 4, 1958.
I-880, originally known as Route 242, was officially taken into the highway system in 1959 (former Sts. & Hy. Code, § 542, added by Stats. 1959, ch. 1382, p. 3663, § 1).[3] In California, the highway system has been divided into routes for management purposes.
*516 After adoption of this route, studies were undertaken by the Division of Highways to develop possible alternate routes between the termini set by the Legislature. Notices of studies for I-880 were sent to the City and County of Sacramento on July 13, 1959.
A public hearing on I-880 was held in Sacramento on December 16, 1960. On April 26, 1961 (after the approval by the State Highway Commission), the United States Bureau of Public Roads gave basic route approval of I-880, and on June 16, 1961, approved the basic design.
I-880 was sent to the right-of-way engineering section of the Division of Highways on October 9, 1961, and the work was finally finished on September 12, 1967. Staff land appraisals were started in June of 1961 and the first appraisal was approved on July 10, 1961. Negotiations for the purchase of land began sometime between June of 1961 and January of 1962. The first land acquisition contract for I-880 was signed with a property owner on July 18, 1961, and plaintiff acquired a considerable percentage of the property needed for I-880 within two years from the inception of its acquisition program.
Activities on I-880 freeway continued until approximately late 1964 or early 1965 when the design engineer in charge discontinued working on I-880, having learned that Interstate 80 Bypass[4] would be affecting I-880 in the vicinity of the defendants' property. According to the design engineer, two intersecting freeways cannot be designed independently one of the other. At this time, the design of I-880 had not progressed sufficiently so that a construction contract could be awarded.
The defendants purchased the property involved in this action in three separate transactions: November 14, 1963; January 9, 1964; and March 19, 1964. By November of 1963 negotiations had been completed for the purchase of the three properties by defendants. It was the defendants' desire to assemble the three parcels purchased into a larger parcel so that it would have a valuable commercial use, the most probable being a service station. The properties were located at the corner of Winters Street and Grand Avenue near I-880 and in close proximity to the proposed "diamond" interchange on I-880. According to Frederick Cramer, one of the defendants, the properties located around the interchange were enhanced in value because of the freeway project. Defendants, however, paid a price for the properties which reflected residential values.[5]
*517 Prior to their purchase, the defendants had made an investigation of the freeway project, and in particular the location of the diamond interchange. (This interchange was still in the same basic location at the time of trial.) Defendants had no knowledge at the time of purchase that their property might be taken by I-80. At the time of purchase defendant Cramer was generally aware that a substantial amount of right of way had been purchased for I-880, that excess land had been offered for public sale along the boundaries of the project, and the degree to which the design of the interchange and the geometries had been completed. He therefore deemed I-880 a certainty as it was designed.
Defendant Cramer had previously been employed by the plaintiff. He left the employ of the Division of Highways on September 30, 1963, and the first purchase of the subject land occurred on November 14, 1963. While employed by the Division of Highways, Cramer worked as a right-of-way agent on I-880, appraising properties, and was generally aware of the location of the project.
Pursuant to a resolution adopted by the Highway Commission on April 20, 1967, plaintiff filed a complaint in condemnation on May 3, 1967, seeking to acquire defendants' property for state highway purposes in connection with I-80.
This property is to be used for on-and-off ramps from I-80 to provide a means for traffic to enter the local street system and to provide a freeway (I-80)-to-freeway (I-880) connection system. In conjunction therewith, a drainage facility is to be constructed on defendants' property. Also included in the geometric design for future construction over and across the subject property are continuous ramps allowing for uninterrupted travel between I-80 and I-880. Only minor design changes have been made in the Winter Street interchange (I-880) which is adjacent to defendants' property.
I-80[6] was given its current designation in 1963. (Sts. & Hy. Code, § 380.) On December 15, 1965, the State Highway Commission adopted a route for I-80 in the vicinity of defendants' property, and thereafter the Bureau of Public Roads gave its approval to location and basic design. Specific design features, appraisal of required properties, and property acquisition for I-80 followed in the spring of 1966.
The first notice defendants had that their property might be taken for the construction of I-80 was four to six weeks prior to January 12, 1965, the date of a public hearing regarding route adoption. Freeways I-880 and *518 I-80 merge together approximately two miles from defendants' property and in effect lose their identity, forming one continuous stretch of pavement.
Gilbert Mulcahy, district right-of-way agent for the Division of Highways, testified as follows:
When you come to a junction of two freeway routes, you cannot build one at a time; the two must be built as one unit. The construction of I-80, like other freeway projects, is contingent upon many factors and there are always uncertainties involved. A freeway does not become a "certainty" (i.e., not abandoned or changed) until a construction contract is awarded to a contractor. There is no written rule or policy of the Division of Highways as to when a freeway becomes a "certainty." Design changes may be made even after the award of a contract. Interchanges are not discussed at the public hearings conducted by the district engineer; this is a factor that is taken up later with the governing body of the city or county that is involved. When it is necessary for Highways to acquire property on a "second time around" basis (i.e., it is necessary to acquire more property after an original take), the state usually must pay a higher value based on highest and best use, and the location of a freeway in the vicinity is a factor. Freeway agreement maps are not provided to the public unless they are stamped "INCOMPLETE PLANS FOR DESIGN STUDY ONLY." The documents entitled "Status Of All Unadvertised Projects For [a particular fiscal year]" are not made available to the public.
Kenneth Bandow, an engineer with the Division of Highways, testified that I-880 and I-80 were an integral unit and had to be designed as one unit, not separately. Some design changes were made in the diamond interchange when I-80 came into being.
Pursuant to the stipulation, the trial court made two special determinations, to wit, that I-880 and I-80 were separate projects and that defendants were entitled to enhancement in value to their property resulting from its proximity to I-880. No reason is given for the court's decision and the parties waived findings of fact and conclusions of law.
(1a) The plaintiff, State of California, argues that the benefit arising from the proposed improvement (I-880 freeway) cannot be taken into consideration as an element of the value of the land; that the trial court erred in finding that I-880 and I-80 are two separate projects and finally, that, absent a contractual relationship, a property owner cannot obtain a vested right to have a state highway constructed in a given location.
*519 The California Constitution, article I, section 14, provides: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner...."
Section 1249 of the Code of Civil Procedure, in pertinent part here, provides: "For the purpose of assessing compensation and damages the right thereto shall be deemed to have accrued at the date of the issuance of summons and its actual value at that date shall be the measure of compensation for all property to be actually taken. ..." (Italics added.) The "actual value" of property taken in eminent domain has been declared to be its market value. (See 4 Nichols on Eminent Domain (3d ed.) § 12.1, and cases cited in fn. 12 at pp. 9-14.)
(2) The general rule in this state is that enhanced value caused by the condemner's proposed improvement may not be considered as a factor in determining the market value of the property to be taken. (San Diego Land etc. Co. v. Neale (1888) 78 Cal. 63, 74-75 [20 P.2d 372]; People ex rel. Dept. Pub. Wks. v. Shasta Pipe etc. Co. (1968) 264 Cal. App.2d 520, 539 [70 Cal. Rptr. 618]; People ex rel. Dept. Water Resources v. Brown (1967) 255 Cal. App.2d 597, 599 [63 Cal. Rptr. 363]; Community Redevelopment Agency v. Henderson (1967) 251 Cal. App.2d 336, 343 [59 Cal. Rptr. 311]; City of San Diego v. Boggeln (1958) 164 Cal. App.2d 1, 5 [330 P.2d 74]; in general, see 20 Hastings L.J. 622; 4 Nichols on Eminent Domain (3d ed.) § 12.3151; 1 Orgel on Valuation Under Eminent Domain (2d ed. 1953) § 98 et seq.) However, this general rule is subject to qualification depending upon the facts in a given case.
It is not the nomenclature used in designating units of the California highway system which is dispositive on the question of separability of the various "projects"[7] by which the total system is to be constructed. For purposes of determining enhancement, each highway unit must, in fairness to both condemner and condemnee, be examined to determine the area in which the condemnee's property is located. (3) Property within the area of the freeway unit location, that is, along its route and taken for the unit's purposes, may not be enhanced in value by that unit. (See authorities cited *520 above.) No enhancement accrues after the unit or project site has been definitely determined. Property taken from another area, different by reason of time and space factors, for a new route freeway unit, and whether or not the units eventually merge as a common freeway, may be enhanced in value by the location of this latter separate unit. This property may be enhanced in value by the original unit, for purposes of supplemental condemnation, if it was not probable that such property would be included in the original unit. (United States v. Miller (1942) 317 U.S. 369 [87 L.Ed. 336, 63 S.Ct. 276, 147 A.L.R. 55].)
(1b) Here, I-880 was planned to follow an area along and adjacent to its present location. The right-of-way lands were acquired and subsequently lands found to be excess were disposed of. The defendants' land was not needed for the proposed I-880 construction for it was not within the area of lands required for this particular state highway unit. The defendants' land was condemned when the state embarked on a separate highway unit to meet a subsequently determined highway need and thus was a part of this second area encompassing the route of I-80.
There is nothing in the record to indicate there was any uncertainty concerning the route to be taken by I-880 from its inception, and defendants' land was not within the area of this route and was not needed to be acquired.
In United States v. Miller, supra, 317 U.S. at page 377 [87 L.Ed. at page 344], the court, in discussing certain evidence of the enhancement of value, said: "The question then is whether the respondents' lands were probably within the scope of the project from the time the Government was committed to it. If they were not, but were merely adjacent lands, the subsequent enlargement of the project to include them ought not to deprive the respondents of the value added in the meantime for the proximity of the improvement. If, on the other hand, they were, the Government ought not to pay any increase in value arising from the known fact that the lands probably would be condemned. The owners ought not to gain by speculating on probable increase in value due to the Government's activities." (Accord, United States v. Reynolds (1970) 397 U.S. 14 [25 L.Ed.2d 12, 90 S.Ct. 803].)
We think this case falls within the first category set forth in Miller under the facts brought forth at trial. (Cf. United States v. Crance (8th Cir.1965) 341 F.2d 161, 163-166, cert. den 382 U.S. 815 [15 L.Ed.2d 63, 86 S.Ct. 36].) We therefore hold that the trial court correctly determined that there were two separate projects and that defendants were entitled to enhancement in value of this property resulting from its proximity to I-880. We *521 emphasize that the holding herein is based upon the specific facts brought forth at trial.
The judgment is affirmed.
Pierce, P.J., and Bray, J.,[*] concurred.
A petition for a rehearing was denied February 16, 1971, and appellant's petition for a hearing by the Supreme Court was denied March 16, 1971.
NOTES
[1] The record does not disclose any reasons for the court's ruling on this matter. No memorandum of decision appears in the record, and findings of fact and conclusions of law were waived by the parties.
[2] Hereinafter referred to as "I-880."
[3] Route 242 became Route 880 in 1963. (Sts. & Hy. Code, § 622 (operative July 1, 1964).)
[4] Hereinafter referred to as "I-80."
[5] It was not until early in 1967 that a resale of land near the proposed interchange occurred, which reflected increased value caused by the freeway, and this sale was apparently based on a rezoning and with knowledge of the I-80 design.
[6] I-80 itself is designed to provide through movement of traffic for approximately 12 to 14 lanes and thereby help to relieve a commuter problem.
[7] The term "project" as used by the parties, leads to problems in semantics. It appears to mean something different to the various parties employing the term. For example, does it mean the entire California freeway system, a 20-year plan or design for the freeway going through and around Sacramento, a particular stretch of freeway in the design and land acquisition stage, a freeway for which a construction contract has been let, or something else? We therefore have employed the term "unit" as being more meaningful. As used herein, the term "unit," in effect, means "project site."
[*] Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.