[Civ. No. 28030. First Dist., Div. Three. Nov. 23, 1971.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
CARLYLE MILLER et al., Defendants and Appellants.

468

---

**COUNSEL**

Wyckoff, Parker, Boyle & Pope, Philip T. Boyle and Hubert Wyckoff for Defendants and Appellants.

Harry S. Fenton, John P. Horgan, A. Matthew Raggio, William R. Edgar and Robert R. Buell for Plaintiff and Respondent.

## OPINION

**BROWN (H. C.), J.**—Defendants Carlyle Miller and D. K. Miller appeal from a judgment after trial by jury in a condemnation action which awarded them $56,500 for property taken by the State of California for state highway purposes.

The state in the eminent domain proceeding acquired two parcels of the appellants' property described in the state's complaint as parcels 1 and 1A. Appellants contend that the trial court erred in excluding evidence that parcel 1A had been enhanced in value when the state constructed a highway interchange with drainage facilities.

Appellants' property consists of a 13.029-acre strip of undeveloped land lying generally west of State Highway 1 between the cities of Santa Cruz and Watsonville. The property extends generally from Rio Del Mar Boulevard on the north to the intersection of Freedom Boulevard and Highway 1, known as Rob Roy junction, to the south. The property was low-lying and marshy. Water from the area of Rob Roy junction and the surrounding hills runs through the property and drains under the highway at the Rio Del Mar intersection.

In 1962, the state entered into a freeway agreement with the County of Santa Cruz for the purpose of converting the portion of Highway 1 from the Santa Cruz city limits to the Rob Roy junction into a full freeway. Six interchanges were planned, including interchanges for Rio Del Mar and Rob Roy. An improved drainage facility for the area was also planned.

The plan for drainage of the area called for an eight by ten culvert at the Rob Roy interchange and a lined concrete channel running along the highway over a portion of appellants' property and leading to a concrete box culvert passing under the freeway at the Rio Del Mar interchange and emptying into Valencia Creek. Since a new drainage was designed in anticipation of further development in the watershed which would benefit adjoining property owners, negotiations were entered into by the state, the county and appellants regarding a cooperative agreement for the construction of the project.

Though the two interchanges and the associated drainage improvements were designed as a single project to be let under a single contract when sufficient funds were available, because of a high accident rate at the Rio Del Mar intersection, it was decided to construct that interchange first. In the interest of economy and efficiency, the culvert which was to run under the freeway at the Rio Del Mar interchange was included in the contract for the interchange.

As part of appellants' property was required for the culvert to be installed in conjunction with the Rio Del Mar interchange construction, a complaint was filed herein and an order of immediate possession obtained. The Rio Del Mar interchange was completed with the larger culvert replacing a smaller 48-inch concrete pipe.

During negotiations with the parties to the proposed cooperative agreement for the construction of the remaining portion of the drainage system, there was a change in federal design criteria. In response to a new emphasis by the federal government on safety and esthetics, it became necessary to redesign the system. The portion of the system which would require additional property from appellants was changed from a narrow, deep, concrete lined channel located close to the highway to a wider, flatter, more natural looking, unlined channel located farther from the highway. This change necessitated the acquisition of more than three quarters of appellants' property. Any chance of entering into the proposed cooperative agreement was destroyed because appellants were left with only a minimal parcel of property that would be benefitted by the project.

The state then moved for leave to file an amendment to the original complaint herein, adding the property described as parcel 1A which would be required for the redesigned channel. The motion was granted over the opposition of appellants.

■ At the hearings preliminary to trial, it was decided upon substantial evidence that the Rob Roy and Rio Del Mar interchanges were to be separate projects. This decision, with which we agree, meant that appellants were to be entitled to any enhancement in the value of their land due to the Rio Del Mar interchange. Under the trial court's ruling, however, the appellants were not to be entitled to any enhancement due to the larger drain pipe under the Rio Del Mar interchange, presumably on the theory that the larger drain pipe was not a part of the Rio Del Mar project but was merely put in at that time for economy and convenience. The trial court in making this ruling was following the general rule "that enhanced value caused by the condemner's proposed improvement [project enhancement] may not be considered as a factor in determining the market value of the property to be taken. [Citations.]" (*People ex rel. Dept. Pub. Wks.* v. *Cramer,* 14 Cal. App.3d 513, 519 [92 Cal.Rptr. 401].) The Supreme Court in *Merced Irrigation Dist.* v. *Woolstenhulme,* 4 Cal.3d 478, 494 [93 Cal.Rptr. 833, 483 P.2d 1], held that " 'just compensation' " should include " 'project enhancement' " under circumstances that the evidence suggests were present in the case at hand.

"[T]he increase in value of land which is initially expected to be outside

the boundaries of a proposed improvement, must be recognized to constitute a proper element of just compensation. Purchasers and sellers regularly, and quite reasonably, take into account the benefit that the land can be expected to reap from an imminent public project, and it would be equally unfair and incompatible with the principles underlying our constitutional just compensation provision to exclude such enhanced value. Although the district chooses to characterize compensation for this project enhanced value as a 'windfall' to the landowner, that epithet might equally be applied to the wide variety of other components of market value for which a landowner might not have directly 'paid,' factors such as zoning laws, public services and general neighborhood appearance which, as previously noted, have long been recognized to be legitimate elements of 'just compensation.'

"In light of this analysis and the weight of authority, we now hold that increases in value, attributable to a project but reflecting a reasonable expectation that property will not be taken for the improvement, should properly be considered in determining 'just compensation.' " (*Merced Irrigation Dist.* v. *Woolstenhulme, supra,* 4 Cal.3d 478, 495.)

 The real issue presented under the facts of the case at hand is whether there was reasonable expectation that their property described in the amended complaint as parcel 1A would not be taken from the project of which it was a part.

In computing just compensation, a jury should consider the increase in value attributable to the project up until the time when it became probable that the land would be needed for the project. (*Merced Irrigation Dist.* v. *Woolstenhulme, supra,* p. 498.)

In determining when it became reasonably probable that the state would require the property, consideration should be given to the public information disseminated concerning the project. It must be recognized that the action of government is sometimes slow and there may be reasonable variations from the original plan. There is "no reason to require the state to pay an incremental value if an informed individual could not reasonably expect that the property would be outside the project." (*Merced Irrigation Dist.* v. *Woolstenhulme, supra,* p. 496; see also fn. 9, p. 496.)

During the period when it was not likely that appellants' land would be condemned, the fair market value of the property may have appreciated because of anticipation that the land would partake in the advantages of the proposed project. The owner would thus be entitled to such increase in value. On the other hand, if it was reasonably foreseeable that parcel 1A was likely to be condemned, then enhancement to the profit of appellants ceased.

The facts before us disclose that the announced plan of the state was to construct the two interchanges adjacent to appellants' property at the Rio Del Mar and Rob Roy junctions. In June 1966, the state filed its complaint against appellants (and others) to consider .05 of an acre strip of appellants' land bordering the proposed highway. On August 25, 1966, the state obtained an order for possession of that strip of appellants' property. It was obvious to the state that providing the improved drainage would enhance the value of the remaining three acres of appellants' property. Negotiations with the owners were conducted regarding a cooperative agreement for the construction of the improvements. Just what the negotiations were is not stated, but it is also obvious that the owners would participate in the cost or pay some part of improvements on a project that was improving their property. The appellants, recognizing the value of the improved drainage to their property and the value of having property adjacent to the interchanges, filed a stipulation on August 21, 1968 to waive any claim to severance damages.

On November 1, 1968, after the Rio Del Mar interchange had been completed with its enlarged drainage pipe beneath it and in place, respondent was granted leave to file an amended complaint for the purpose of taking all but three acres of appellants' land in order to improve safety on the highway, to safeguard the back of the highway from erosion and for esthetic reasons. This additional take was referred to in the state's amended complaint as parcel 1A. An order for possession of parcel 1A was obtained in January 1969.

According to the state engineer: "Well, our criteria was changed. We became at that time conscious of esthetics and safety. The Federal Government went into safety. They became safety conscious and because they participate, their funding goes into our construction, effort was put forth to make it as safe as possible. And so because the channel which was planned was a deep steepsided channel, which was immediately adjacent to the highway, the bottom of the fill, it was felt that it would be very unsafe to have this big ditch alongside the highway and the steep sides. If one ran into it, it would be disastrous. So it was felt that a wider, flatter, unlined channel, which was located further from the highway, would be safer for the traveling motorist and also that it would be more esthetically pleasing to look at, more natural, the unlined, flatter, more natural looking."

It is arguable, from the limited evidence before us, that the taking of the property in parcel 1A for the original project could not reasonably have been expected since the design change was not a minor adjustment but a redesign to meet new goals. The evidence is understandably undeveloped on the question, among others, of when it was reasonably probable that appel-

lants' land (parcel 1A) would be within or without the state's requirements for the project. At the time of the trial of the instant case, however, the parties and the court did not have the benefit of *Merced Irrigation Dist., supra,* which was decided on March 31, 1971. Each side may have additional evidence to present in following the guidelines established in that case.

The judgment is reversed.

Draper, P. J., and Caldecott, J., concurred.